**07 C 6830**

**JUDGE DARRAH**
**MAGISTRATE JUDGE COX**

**EXHIBIT  B**

#02329                                    11/6/07                    2007S-0284

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

JEFFREY SIEGEL, Administrator of the
Estate of MOUSTAPHA AKKAD,
deceased;
SOOHA AKKAD, Individually;
SUSAN GITELSON, Special Administrator
of the Estate of RIMA AKKAD MONLA,
deceased; and
MICHAEL BUTLER,

              Plaintiffs,

        v.

H GROUP HOLDING, INC., a corporation
("H GROUP");
GLOBAL HYATT CORPORATION,
a corporation ("GLOBAL");
HYATT INTERNATIONAL
CORPORATION, a corporation ("HI");
HYATT CORPORATION, a corporation
("HYATT CORP.");
HYATT HOTELS CORPORATION,
a corporation ("HYATT HOTELS");
HYATT INTERNATIONAL (EUROPE
AFRICA MIDDLE EAST) LLC
("HYATT EAME");
AIC HOLDING CO., a corporation ("AIC");
HYATT INTERNATIONAL HOLDINGS
CO., a corporation ("HIH");
HI HOLDINGS LUXEMBURG S.a.r.l.
("HI LUX");
ZARA INVESTMENT (HOLDING) CO.
("ZARA");  and
AMMAN TOURISM INVESTMENT
COMPANY, LTD. ("ATIC");

              Defendants.

No.    2007 L 9489

## AMENDED COMPLAINT AT LAW

## AMENDED COMPLAINT AT LAW

## COUNT I

**Negligence - Wrongful Death of Moustapha Akkad - Management Entities**

Plaintiff, JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, deceased, complaining of defendants, H GROUP, GLOBAL, HI, HYATT CORP., HYATT HOTELS, HYATT EAME, AIC, HIH and HI LUX, states:

1.  On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman, Jordan.

2.  Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.  On and before November 9, 2005, Hyatt EAME, by and through its agents and employees, operated and managed the Grand Hyatt Amman.

4.  On and before November 9, 2005, Zara and ATIC, and each of them, individually and by and through their agents and employees, owned, operated and managed the Grand Hyatt Amman.

5.  On and before November 9, 2005, Hyatt EAME was an affiliate of H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, and was required to operate and manage the Grand Hyatt Amman in conformity with the standards of each of them.

6.  On and before November 9, 2005, the world headquarters for H Group, Global, HI, Hyatt Corp. and Hyatt Hotels were, and currently are, located in Chicago, Illinois.

2

7.    On November 9, 2005, H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their affiliate, Hyatt EAME, directly participated in the supervision, direction, operation and management of the Grand Hyatt Amman.

8.    On and before November 9, 2005, Hyatt EAME, and H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their affiliate, Hyatt EAME, provided security for the Grand Hyatt Amman.

9.    On November 9, 2005, the Grand Hyatt was one of the few high-end hotels in Amman totally accessible from the street.

10.    Prior to November 9, 2005, metal detectors had been located at the entrance to the Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

11.    The bombing which took place at the Grand Hyatt Amman on November 9, 2005, was foreseeable to defendants for the following reasons:

      a.    While in America, 9/11 corresponds to September 11th, in the Middle East, the month follows the day, thus, November 9th is noted in Jordan as 9/11;

      b.    In 1992, al-Zarqawi was arrested and spent five years in a Jordanian prison for conspiring and threatening to overthrow the monarchy. He was also arrested for possessing explosives;

      c.    Upon release from prison in 1999, al-Zarqawi was involved in an attempt to blow up the Radisson SAS hotel in Amman which is located only 500 yards from the Grand Hyatt;

      d.    In 2001, al-Zarqawi was arrested and released in Jordan, however, he was later convicted in absentia and sentenced to death for plotting the bombing at the Radisson SAS in 1999;

3

e.   On October 28, 2002, Lawrence Foley, a senior U.S. diplomat working for the United States Agency for International Development in Jordan, was assassinated outside his home in Amman by assassins who had been armed and paid by al-Zarqawi. Al-Zarqawi was again sentenced to death in absentia in Jordan;

f.   In April 2004, Jordanian authorities broke up an al-Zarqawi/al-Qaeda plot to use chemical weapons at the U.S. Embassy, the Jordanian Prime Minister's office and the headquarters of Jordanian intelligence, all located in Amman, Jordan;

g.   On November 9, 2005, al-Zarqawi was the most wanted man in Jordan, having participated in or master-minded a number of violent actions against Iraq, Jordan and United States targets. Indeed, the United States Government had offered $25 million for information leading to his capture;

h.   Each defendant knew, or should have known, of specific governmental warnings that existed prior to November 9, 2005 regarding the potential for the bombing of Jordanian businesses, including hotels, and of the requirement for heightened security including the installation of metal detectors and/or x-ray equipment.

12.   On November 9, 2005, Moustapha Akkad was a registered guest at the Grand Hyatt Amman and was located in the lobby of said hotel when and where Abed detonated the explosives.

13.   On November 9, 2005, Hyatt EAME, by and through its agents and employees, as well as H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their agents and employees, including, but not limited to, their affiliate, Hyatt EAME, were negligent in one or more of the following respects:

a.   Permitted and allowed unauthorized individuals and explosives easy access to the interior premises of said hotel;

4

b.  In light of the foreseeability of a terrorist attack on 9/11, failed to responsibly protect its guests from criminal attack and violence;

c.  Failed to provide metal detectors and/or x-ray equipment when defendants knew, or should have known, said equipment was required to insure the safety of its guests;

d.  Failed to provide adequate security personnel and/or bomb-sniffing dogs when defendants knew or should have known that heightened security measures were required for the protection of its guests.

14.   As a proximate result of one or more of said acts or omissions, which breached defendants' duty of care to Moustapha Akkad, Moustapha Akkad sustained injuries of a personal and pecuniary nature prior to his death on November 11, 2005.

15.   At the time of his death, Moustapha Akkad left surviving him the following heirs: Sooha Akkad, his wife; Zade Akkad, his son; Tarek Akkad, his son; and Malek Akkad, his son; all of whom have suffered personal and pecuniary loss as a result of his death.

16.   Jeffrey Siegel is the duly appointed Administrator of the Estate of Moustapha Akkad, deceased, and brings this action pursuant to 740 Illinois Compiled Statutes 180/1 *et seq.*, commonly known as the Wrongful Death Act.

WHEREFORE, plaintiff, JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, deceased, demands judgment against defendants, H GROUP HOLDING, INC., a corporation; GLOBAL HYATT CORPORATION, a corporation; HYATT INTERNATIONAL CORPORATION, a corporation; HYATT CORPORATION, a corporation; HYATT HOTELS CORPORATION, a corporation; HYATT INTERNATIONAL (EUROPE AFRICA MIDDLE EAST) LLC, AIC HOLDING CO., a corporation; HYATT INTERNATIONAL HOLDINGS CO., a corporation; and HI HOLDINGS LUXEMBURG

5

S.a.r.l., and each of them, for a sum in excess of the jurisdictional limits to bring this lawsuit in the Law Division of the Circuit Court of Cook County, Illinois, together with costs and interests.

## COUNT II

### Negligence - Survival Action of Moustapha Akkad - Management Entities

Plaintiff, JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, deceased, complaining of defendants, H GROUP, GLOBAL, HI, HYATT CORP., HYATT HOTELS, HYATT EAME, AIC, HIH and HI LUX, states:

1.     On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman, Jordan.

2.     Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.     On and before November 9, 2005, Hyatt EAME, by and through its agents and employees, operated and managed the Grand Hyatt Amman.

4.     On and before November 9, 2005, Zara and ATIC, and each of them, individually and by and through their agents and employees, owned, operated and managed the Grand Hyatt Amman.

5.     On and before November 9, 2005, Hyatt EAME was an affiliate of H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, and was required to operate and manage the Grand Hyatt Amman in conformity with the standards of each of them.

6.     On and before November 9, 2005, the world headquarters for H Group, Global,

6

HI, Hyatt Corp. and Hyatt Hotels were, and currently are, located in Chicago, Illinois.

7.      On November 9, 2005, H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC,

HIH and HI Lux, and each of them, individually and by and through their affiliate, Hyatt EAME,

directly participated in the supervision, directions, operation and management of the Grand Hyatt

Amman.

8.      On and before November 9, 2005, Hyatt EAME, and H Group, Global, HI, Hyatt

Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through

their affiliate, Hyatt EAME, provided security for the Grand Hyatt Amman.

9.      On November 9, 2005, the Grand Hyatt was one of the few high-end hotels in

Amman totally accessible from the street.

10.     Prior to November 9, 2005, metal detectors had been located at the entrance to the

Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

11.     The bombing which took place at the Grand Hyatt Amman on November 9, 2005,

was foreseeable to defendants for the following reasons:

      a.      While in America, 9/11 corresponds to September 11th, in
the Middle East, the month follows the day, thus,
November 9th is noted in Jordan as 9/11;

      b.      In 1992, al-Zarqawi was arrested and spent five years in a
Jordanian prison for conspiring and threatening to
overthrow the monarchy.  He was also arrested for
possessing explosives;

      c.      Upon release from prison in 1999, al-Zarqawi was involved
in an attempt to blow up the Radisson SAS hotel in Amman
which is located only 500 yards from the Grand Hyatt;

      d.      In 2001, al-Zarqawi was arrested and released in Jordan,
however, he was later convicted in absentia and sentenced
to death for plotting the bombing at the Radisson SAS in

1999;

e.   On October 28, 2002, Lawrence Foley, a senior U.S. diplomat working for the United States Agency for International Development in Jordan, was assassinated outside his home in Amman by assassins who had been armed and paid by al-Zarqawi. Al-Zarqawi was again sentenced to death in absentia in Jordan;

f.   In April 2004, Jordanian authorities broke up an al-Zarqawi/al-Qaeda plot to use chemical weapons at the U.S. Embassy, the Jordanian Prime Minister's office and the headquarters of Jordanian intelligence, all located in Amman, Jordan;

g.   On November 9, 2005, al-Zarqawi was the most wanted man in Jordan, having participated in or master-minded a number of violent actions against Iraq, Jordan and United States targets. Indeed, the United States Government had offered $25 million for information leading to his capture;

h.   Each defendant knew, or should have known, of specific governmental warnings that existed prior to November 9, 2005 regarding the potential for the bombing of Jordanian businesses, including hotels, and of the requirement for heightened security including the installation of metal detectors and/or x-ray equipment.

12.   On November 9, 2005, Moustapha Akkad was a registered guest at the Grand Hyatt Amman and was located in the lobby of said hotel when and where Abed detonated the explosives.

13.   On November 9, 2005, Hyatt EAME, by and through its agents and employees, as well as H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their agents and employees, including, but not limited to, their affiliate, Hyatt EAME, were negligent in one or more of the following respects:

a.   Permitted and allowed unauthorized individuals and explosives easy access to the interior premises of said

8

hotel;

b.    In light of the foreseeability of a terrorist attack on 9/11, failed to responsibly protect its guests from criminal attack and violence;

c.    Failed to provide metal detectors and/or x-ray equipment when defendants knew, or should have known, said equipment was required to insure the safety of its guests;

d.    Failed to provide adequate security personnel and/or bomb-sniffing dogs when defendants knew or should have known that heightened security measures were required for the protection of its guests.

14.    As a proximate result of one or more of said acts or omissions, which breached defendants' duty of care to Moustapha Akkad, Moustapha Akkad sustained injuries of a personal and pecuniary nature prior to his death on November 11, 2005.

15.    Had he survived, Moustapha Akkad would have been entitled to bring a cause of action on his own behalf, and this action survives him, pursuant to 755 Illinois Compiled Statutes 5/27-6, commonly known as the Survival Act.

16.    Jeffrey Siegel is the duly appointed Administrator of the Estate of Moustapha Akkad, deceased, and brings this action pursuant to 755 Illinois Compiled Statutes 5/27-6, commonly known as the Survival Act.

WHEREFORE, plaintiff, JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, deceased, demands judgment against defendants, H GROUP HOLDING, INC., a corporation; GLOBAL HYATT CORPORATION, a corporation; HYATT INTERNATIONAL CORPORATION, a corporation; HYATT CORPORATION, a corporation; HYATT HOTELS CORPORATION, a corporation; HYATT INTERNATIONAL (EUROPE AFRICA MIDDLE EAST) LLC, AIC HOLDING CO., a corporation; HYATT

9

INTERNATIONAL HOLDINGS CO., a corporation; and HI HOLDINGS LUXEMBURG

S.a.r.l., and each of them, for a sum in excess of the jurisdictional limits to bring this lawsuit in

the Law Division of the Circuit Court of Cook County, Illinois, together with costs and interests.

**COUNT III**

**Negligence - Personal Injury of Sooha Akkad - Management Entities**

Plaintiff, SOOHA AKKAD, complaining of defendants, H GROUP, GLOBAL, HI,

HYATT CORP., HYATT HOTELS, HYATT EAME, AIC, HIH and HI LUX, states:

1.     On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi

suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman,

Jordan.

2.     Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-

Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.     On and before November 9, 2005, Hyatt EAME, by and through its agents and

employees, operated and managed the Grand Hyatt Amman.

4.     On and before November 9, 2005, Zara and ATIC, and each of them, individually

and by and through their agents and employees, owned, operated and managed the Grand Hyatt

Amman.

5.     On and before November 9, 2005, Hyatt EAME was an affiliate of H Group,

Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, and was

required to operate and manage the Grand Hyatt Amman in conformity with the standards of

each of them.

6.     On and before November 9, 2005, the world headquarters for H Group, Global,

10

HI, Hyatt Corp. and Hyatt Hotels were, and currently are, located in Chicago, Illinois.

7.   On November 9, 2005, H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their affiliate, Hyatt EAME, directly participated in the supervision, direction, operation and management of the Grand Hyatt Amman.

8.   On and before November 9, 2005, Hyatt EAME, and H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their affiliate, Hyatt EAME, provided security for the Grand Hyatt Amman.

9.   On November 9, 2005, the Grand Hyatt was one of the few high-end hotels in Amman totally accessible from the street.

10.   Prior to November 9, 2005, metal detectors had been located at the entrance to the Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

11.   The bombing which took place at the Grand Hyatt Amman on November 9, 2005, was foreseeable to defendants for the following reasons:

    a.   While in America, 9/11 corresponds to September 11th, in the Middle East, the month follows the day, thus, November 9th is noted in Jordan as 9/11;

    b.   In 1992, al-Zarqawi was arrested and spent five years in a Jordanian prison for conspiring and threatening to overthrow the monarchy.  He was also arrested for possessing explosives;

    c.   Upon release from prison in 1999, al-Zarqawi was involved in an attempt to blow up the Radisson SAS hotel in Amman which is located only 500 yards from the Grand Hyatt;

    d.   In 2001, al-Zarqawi was arrested and released in Jordan, however, he was later convicted in absentia and sentenced to death for plotting the bombing at the Radisson SAS in

1999;

e.  On October 28, 2002, Lawrence Foley, a senior U.S. diplomat working for the United States Agency for International Development in Jordan, was assassinated outside his home in Amman by assassins who had been armed and paid by al-Zarqawi. Al-Zarqawi was again sentenced to death in absentia in Jordan;

f.  In April 2004, Jordanian authorities broke up an al-Zarqawi/al-Qaeda plot to use chemical weapons at the U.S. Embassy, the Jordanian Prime Minister's office and the headquarters of Jordanian intelligence, all located in Amman, Jordan;

g.  On November 9, 2005, al-Zarqawi was the most wanted man in Jordan, having participated in or master-minded a number of violent actions against Iraq, Jordan and United States targets. Indeed, the United States Government had offered $25 million for information leading to his capture;

h.  Each defendant knew, or should have known, of specific governmental warnings that existed prior to November 9, 2005 regarding the potential for the bombing of Jordanian businesses, including hotels, and of the requirement for heightened security including the installation of metal detectors and/or x-ray equipment.

12.  On November 9, 2005, Sooha Akkad was a registered guest at the Grand Hyatt Amman and was located in the lobby of said hotel when and where Abed detonated the explosives.

13.  On November 9, 2005, Hyatt EAME, by and through its agents and employees, as well as H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their agents and employees, including, but not limited to, their affiliate, Hyatt EAME, were negligent in one or more of the following respects:

a.  Permitted and allowed unauthorized individuals and explosives easy access to the interior premises of said

12

hotel;

b.    In light of the foreseeability of a terrorist attack on 9/11, failed to responsibly protect its guests from criminal attack and violence;

c.    Failed to provide metal detectors and/or x-ray equipment when defendants knew, or should have known, said equipment was required to insure the safety of its guests;

d.    Failed to provide adequate security personnel and/or bomb-sniffing dogs when defendants knew or should have known that heightened security measures were required for the protection of its guests.

14.    As a proximate result of one or more of said acts or omissions, which breached defendants' duty of care to Sooha Akkad, Sooha Akkad sustained injuries of a personal and pecuniary nature.

WHEREFORE, plaintiff, SOOHA AKKAD, demands judgment against defendants, H GROUP HOLDING, INC., a corporation; GLOBAL HYATT CORPORATION, a corporation; HYATT INTERNATIONAL CORPORATION, a corporation; HYATT CORPORATION, a corporation; HYATT HOTELS CORPORATION, a corporation; HYATT INTERNATIONAL (EUROPE AFRICA MIDDLE EAST) LLC, AIC HOLDING CO., a corporation; HYATT INTERNATIONAL HOLDINGS CO., a corporation; and HI HOLDINGS LUXEMBURG S.a.r.l., and each of them, for a sum in excess of the jurisdictional limits to bring this lawsuit in the Law Division of the Circuit Court of Cook County, Illinois, together with costs and interests.

## COUNT IV

### Negligence - Wrongful Death of Rima Akkad Monla - Management Entities

Plaintiff, SUSAN GITELSON, Special Administrator of the Estate of RIMA AKKAD MONLA, deceased, complaining of defendants, H GROUP, GLOBAL, HI, HYATT CORP.,

HYATT HOTELS, HYATT EAME, AIC, HIH and HI LUX, states:

1.    On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman, Jordan.

2.    Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.    On and before November 9, 2005, Hyatt EAME, by and through its agents and employees, operated and managed the Grand Hyatt Amman.

4.    On and before November 9, 2005, Zara and ATIC, and each of them, individually and by and through their agents and employees, owned, operated and managed the Grand Hyatt Amman.

5.    On and before November 9, 2005, Hyatt EAME was an affiliate of H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, and was required to operate and manage the Grand Hyatt Amman in conformity with the standards of each of them.

6.    On and before November 9, 2005, the world headquarters for H Group, Global, HI, Hyatt Corp. and Hyatt Hotels were, and currently are, located in Chicago, Illinois.

7.    On November 9, 2005, H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their affiliate, Hyatt EAME, directly participated in the supervision, direction, operation and management of the Grand Hyatt Amman.

8.    On November 9, 2005, Hyatt EAME, and H Group, Global, HI, Hyatt Corp.,

14

Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their affiliate, Hyatt EAME, provided security for the Grand Hyatt Amman.

9.     On November 9, 2005, the Grand Hyatt was one of the few high-end hotels in Amman totally accessible from the street.

10.     Prior to November 9, 2005, metal detectors had been located at the entrance to the Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

11.     The bombing which took place at the Grand Hyatt Amman on November 9, 2005, was foreseeable to defendants for the following reasons:

      a.     While in America, 9/11 corresponds to September 11th, in the Middle East, the month follows the day, thus, November 9th is noted in Jordan as 9/11;

      b.     In 1992, al-Zarqawi was arrested and spent five years in a Jordanian prison for conspiring and threatening to overthrow the monarchy. He was also arrested for possessing explosives;

      c.     Upon release from prison in 1999, al-Zarqawi was involved in an attempt to blow up the Radisson SAS hotel in Amman which is located only 500 yards from the Grand Hyatt;

      d.     In 2001, al-Zarqawi was arrested and released in Jordan, however, he was later convicted in absentia and sentenced to death for plotting the bombing at the Radisson SAS in 1999;

      e.     On October 28, 2002, Lawrence Foley, a senior U.S. diplomat working for the United States Agency for International Development in Jordan, was assassinated outside his home in Amman by assassins who had been armed and paid by al-Zarqawi. Al-Zarqawi was again sentenced to death in absentia in Jordan;

      f.     In April 2004, Jordanian authorities broke up an al-Zarqawi/al-Qaeda plot to use chemical weapons at the U.S. Embassy, the Jordanian Prime Minister's office and the

15

headquarters of Jordanian intelligence, all located in
Amman, Jordan;

g.    On November 9, 2005, al-Zarqawi was the most wanted
man in Jordan, having participated in or master-minded a
number of violent actions against Iraq, Jordan and United
States targets.  Indeed, the United States Government had
offered $25 million for information leading to his capture;

h.    Each defendant knew, or should have known, of specific
governmental warnings that existed prior to November 9,
2005 regarding the potential for the bombing of Jordanian
businesses, including hotels, and of the requirement for
heightened security including the installation of metal
detectors and/or x-ray equipment.

12.    On November 9, 2005, Rima Akkad Monla was a guest at the Grand Hyatt

Amman and was located in the lobby of said hotel when and where Abed detonated the

explosives.

13.    On November 9, 2005, Hyatt EAME, by and through its agents and employees, as

well as H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of

them, individually and by and through their agents and employees, including, but not limited to,

their affiliate, Hyatt EAME, were negligent in one or more of the following respects:

a.    Permitted and allowed unauthorized individuals and
explosives easy access to the interior premises of said
hotel;

b.    In light of the foreseeability of a terrorist attack on 9/11,
failed to responsibly protect its guests from criminal attack
and violence;

c.    Failed to provide metal detectors and/or x-ray equipment
when defendants knew, or should have known, said
equipment was required to insure the safety of its guests;

d.    Failed to provide adequate security personnel and/or bomb-
sniffing dogs when defendants knew or should have known

that heightened security measures were required for the protection of its guests.

14.    As a proximate result of one or more of said acts or omissions, which breached defendants' duty of care to Rima Akkad Monla, Rima Akkad Monla sustained injuries of a personal and pecuniary nature prior to her death on November 9, 2005.

15.    At the time of her death, Rima Akkad Monla left surviving her the following heirs: Ziad Monla, her husband; Tarek Monla, her minor son; and Moustapha Monla, her minor son; all of whom have suffered personal and pecuniary loss as a result of her death.

16.    Susan Gitelson is the duly appointed Special Administrator of the Estate of Rima Akkad Monla, deceased, and brings this action pursuant to 740 Illinois Compiled Statutes 180/1 *et seq.*, commonly known as the Wrongful Death Act.

WHEREFORE, plaintiff, SUSAN GITELSON, Special Administrator of the Estate of RIMA AKKAD MONLA, deceased, demands judgment against defendants, H GROUP HOLDING, INC., a corporation; GLOBAL HYATT CORPORATION, a corporation; HYATT INTERNATIONAL CORPORATION, a corporation; HYATT CORPORATION, a corporation; HYATT HOTELS CORPORATION, a corporation; HYATT INTERNATIONAL (EUROPE AFRICA MIDDLE EAST) LLC, AIC HOLDING CO., a corporation; HYATT INTERNATIONAL HOLDINGS CO., a corporation; and HI HOLDINGS LUXEMBURG S.a.r.l., and each of them, for a sum in excess of the jurisdictional limits to bring this lawsuit in the Law Division of the Circuit Court of Cook County, Illinois, together with costs and interests.

## COUNT V

**Negligence - Personal Injury of Michael Butler - Management Entities**

Plaintiff, MICHAEL BUTLER, complaining of defendants, H GROUP, GLOBAL, HI,

HYATT CORP., HYATT HOTELS, HYATT EAME, AIC, HIH and HI LUX, states:

1.      On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi

suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman,

Jordan.

2.      Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-

Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.      On and before November 9, 2005, Hyatt EAME, by and through its agents and

employees, operated and managed the Grand Hyatt Amman.

4.      On and before November 9, 2005, Zara and ATIC, and each of them, individually

and by and through their agents and employees, owned, operated and managed the Grand Hyatt

Amman.

5.      On and before November 9, 2005, Hyatt EAME was an affiliate of H Group,

Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, and was

required to operate and manage the Grand Hyatt Amman in conformity with the standards of

each of them.

6.      On and before November 9, 2005, the world headquarters for H Group, Global,

HI, Hyatt Corp. and Hyatt Hotels were, and currently are, located in Chicago, Illinois.

7.      On November 9, 2005, H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC,

HIH and HI Lux, and each of them, individually and by and through their affiliate, Hyatt EAME,

18

directly participated in the supervision, direction, operation and management of the Grand Hyatt Amman.

8.     On and before November 9, 2005, Hyatt EAME, and H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of them, individually and by and through their affiliate, Hyatt EAME, provided security for the Grand Hyatt Amman.

9.     On November 9, 2005, the Grand Hyatt was one of the few high-end hotels in Amman totally accessible from the street.

10.     Prior to November 9, 2005, metal detectors had been located at the entrance to the Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

11.     The bombing which took place at the Grand Hyatt Amman on November 9, 2005, was foreseeable to defendants for the following reasons:

    a.    While in America, 9/11 corresponds to September 11th, in the Middle East, the month follows the day, thus, November 9th is noted in Jordan as 9/11;

    b.    In 1992, al-Zarqawi was arrested and spent five years in a Jordanian prison for conspiring and threatening to overthrow the monarchy.  He was also arrested for possessing explosives;

    c.    Upon release from prison in 1999, al-Zarqawi was involved in an attempt to blow up the Radisson SAS hotel in Amman which is located only 500 yards from the Grand Hyatt;

    d.    In 2001, al-Zarqawi was arrested and released in Jordan, however, he was later convicted in absentia and sentenced to death for plotting the bombing at the Radisson SAS in 1999;

    e.    On October 28, 2002, Lawrence Foley, a senior U.S. diplomat working for the United States Agency for International Development in Jordan, was assassinated outside his home in Amman by assassins who had been

armed and paid by al-Zarqawi. Al-Zarqawi was again
sentenced to death in absentia in Jordan;

f.     In April 2004, Jordanian authorities broke up an al-
       Zarqawi/al-Qaeda plot to use chemical weapons at the U.S.
       Embassy, the Jordanian Prime Minister's office and the
       headquarters of Jordanian intelligence, all located in
       Amman, Jordan;

g.     On November 9, 2005, al-Zarqawi was the most wanted
       man in Jordan, having participated in or master-minded a
       number of violent actions against Iraq, Jordan and United
       States targets. Indeed, the United States Government had
       offered $25 million for information leading to his capture;

h.     Each defendant knew, or should have known, of specific
       governmental warnings that existed prior to November 9,
       2005 regarding the potential for the bombing of Jordanian
       businesses, including hotels, and of the requirement for
       heightened security including the installation of metal
       detectors and/or x-ray equipment.

12.     On November 9, 2005, Michael Butler was a registered guest at the Grand Hyatt

Amman and was located in the lobby of said hotel when and where Abed detonated the

explosives.

13.     On November 9, 2005, Hyatt EAME, by and through its agents and employees, as

well as H Group, Global, HI, Hyatt Corp., Hyatt Hotels, AIC, HIH and HI Lux, and each of

them, individually and by and through their agents and employees, including, but not limited to,

their affiliate, Hyatt EAME, were negligent in one or more of the following respects:

a.     Permitted and allowed unauthorized individuals and
       explosives easy access to the interior premises of said
       hotel;

b.     In light of the foreseeability of a terrorist attack on 9/11,
       failed to responsibly protect its guests from criminal attack
       and violence;

c.    Failed to provide metal detectors and/or x-ray equipment
when defendants knew, or should have known, said
equipment was required to insure the safety of its guests;

d.    Failed to provide adequate security personnel and/or bomb-
sniffing dogs when defendants knew or should have known
that heightened security measures were required for the
protection of its guests.

14.    As a proximate result of one or more of said acts or omissions, which breached

defendants' duty of care to Michael Butler, Michael Butler sustained injuries of a personal and

pecuniary nature.

WHEREFORE, plaintiff, MICHAEL BUTLER, demands judgment against defendants, H

GROUP HOLDING, INC., a corporation; GLOBAL HYATT CORPORATION, a corporation;

HYATT INTERNATIONAL CORPORATION, a corporation; HYATT CORPORATION, a

corporation; HYATT HOTELS CORPORATION, a corporation; HYATT INTERNATIONAL

(EUROPE AFRICA MIDDLE EAST) LLC, AIC HOLDING CO., a corporation; HYATT

INTERNATIONAL HOLDINGS CO., a corporation; and HI HOLDINGS LUXEMBURG

S.a.r.l., and each of them, for a sum in excess of the jurisdictional limits to bring this lawsuit in

the Law Division of the Circuit Court of Cook County, Illinois, together with costs and interests.

## COUNT VI

### Negligence - Wrongful Death of Moustapha Akkad - Ownership Entities

Plaintiff, JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD,

deceased, complaining of defendants, ZARA and ATIC, states:

1.    On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi

suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman,

Jordan.

21

2.    Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.    On and before November 9, 2005, Zara and ATIC, and each of them, individually and by and through their agents and employees, owned, operated and managed the Grand Hyatt Amman.

4.    On November 9, 2005, Zara and ATIC, and each of them, individually and by and through their agents and employees, provided security for the Grand Hyatt Amman.

5.    On November 9, 2005, the Grand Hyatt was one of the few hotels in Amman totally accessible from the street.

6.    Prior to November 9, 2005, metal detectors had been located at the entrance to the Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

7.    The bombing which took place at the Grand Hyatt Amman on November 9, 2005, was foreseeable to defendants for the following reasons:

    a.    While in America, 9/11 corresponds to September 11th, in the Middle East, the month follows the day, thus, November 9th is noted in Jordan as 9/11;

    b.    In 1992, al-Zarqawi was arrested and spent five years in a Jordanian prison for conspiring and threatening to overthrow the monarchy.  He was also arrested for possessing explosives;

    c.    Upon release from prison in 1999, al-Zarqawi was involved in an attempt to blow up the Radisson SAS hotel in Amman which is located only 500 yards from the Grand Hyatt;

    d.    In 2001, al-Zarqawi was arrested and released in Jordan, however, he was later convicted in absentia and sentenced to death for plotting the bombing at the Radisson SAS in 1999;

e.    On October 28, 2002, Lawrence Foley, a senior U.S. diplomat working for the United States Agency for International Development in Jordan, was assassinated outside his home in Amman by assassins who had been armed and paid by al-Zarqawi. Al-Zarqawi was again sentenced to death in absentia in Jordan;

f.    In April 2004, Jordanian authorities broke up an al-Zarqawi/al-Qaeda plot to use chemical weapons at the U.S. Embassy, the Jordanian Prime Minister's office and the headquarters of Jordanian intelligence, all located in Amman, Jordan;

g.    On November 9, 2005, al-Zarqawi was the most wanted man in Jordan, having participated in or master-minded a number of violent actions against Iraq, Jordan and United States targets. Indeed, the United States Government had offered $25 million for information leading to his capture;

h.    Each defendant knew, or should have known, of specific governmental warnings that existed prior to November 9, 2005 regarding the potential for the bombing of Jordanian businesses, including hotels, and of the requirement for heightened security including the installation of metal detectors and/or x-ray equipment.

8.    On November 9, 2005, Moustapha Akkad was a registered guest at the Grand Hyatt Amman and was located in the lobby of said hotel when and where Abed detonated the explosives.

9.    On November 9, 2005, Zara and ATIC, and each of them, individually and by and through their agents and employees, were negligent in one or more of the following respects:

a.    Permitted and allowed unauthorized individuals and explosives easy access to the interior premises of said hotel;

b.    In light of the foreseeability of a terrorist attack on 9/11, failed to responsibly protect its guests from criminal attack and violence;

23

     c.      Failed to provide metal detectors and/or x-ray equipment when defendants knew, or should have known, said equipment was required to insure the safety of its guests;

     d.      Failed to provide adequate security personnel and/or bomb-sniffing dogs when defendants knew or should have known that heightened security measures were required for the protection of its guests.

10.    As a proximate result of one or more of said acts or omissions, which breached defendants' duty of care to Moustapha Akkad, Moustapha Akkad sustained injuries of a personal and pecuniary nature prior to his death on November 11, 2005.

11.    At the time of his death, Moustapha Akkad left surviving him the following heirs: Sooha Akkad, his wife; Zade Akkad, his son; Tarek Akkad, his son; and Malek Akkad, his son; all of whom have suffered personal and pecuniary loss as a result of his death.

12.    Jeffrey Siegel is the duly appointed Administrator of the Estate of Moustapha Akkad, deceased, and brings this action pursuant to 740 Illinois Compiled Statutes 180/1 *et seq.*, commonly known as the Wrongful Death Act.

WHEREFORE, plaintiff, JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, deceased, demands judgment against defendants, ZARA INVESTMENT (HOLDING) COMPANY and AMMAN TOURISM INVESTMENT COMPANY, LTD., and each of them, for a sum in excess of the jurisdictional limits to bring this lawsuit in the Law Division of the Circuit Court of Cook County, Illinois, together with costs and interests.

24

<u>COUNT VII</u>

<u>Negligence - Survival Action of Moustapha Akkad - Ownership Entities</u>

Plaintiff, JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, deceased, complaining of defendants, ZARA and ATIC, states:

1.    On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman, Jordan.

2.    Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.    On and before November 9, 2005, Zara and ATIC, and each of them, individually and by and through their agents and employees, owned, operated and managed the Grand Hyatt Amman.

4.    On November 9, 2005, Zara and ATIC, and each of them, individually and by and through their agents and employees, provided security for the Grand Hyatt Amman.

5.    On November 9, 2005, the Grand Hyatt was one of the few hotels in Amman totally accessible from the street.

6.    Prior to November 9, 2005, metal detectors had been located at the entrance to the Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

7.    The bombing which took place at the Grand Hyatt Amman on November 9, 2005, was foreseeable to defendants for the following reasons:

        a.    While in America, 9/11 corresponds to September 11th, in the Middle East, the month follows the day, thus, November 9th is noted in Jordan as 9/11;

b.  In 1992, al-Zarqawi was arrested and spent five years in a
    Jordanian prison for conspiring and threatening to
    overthrow the monarchy.  He was also arrested for
    possessing explosives;

c.  Upon release from prison in 1999, al-Zarqawi was involved
    in an attempt to blow up the Radisson SAS hotel in Amman
    which is located only 500 yards from the Grand Hyatt;

d.  In 2001, al-Zarqawi was arrested and released in Jordan,
    however, he was later convicted in absentia and sentenced
    to death for plotting the bombing at the Radisson SAS in
    1999;

e.  On October 28, 2002, Lawrence Foley, a senior U.S.
    diplomat working for the United States Agency for
    International Development in Jordan, was assassinated
    outside his home in Amman by assassins who had been
    armed and paid by al-Zarqawi.  Al-Zarqawi was again
    sentenced to death in absentia in Jordan;

f.  In April 2004, Jordanian authorities broke up an al-
    Zarqawi/al-Qaeda plot to use chemical weapons at the U.S.
    Embassy, the Jordanian Prime Minister's office and the
    headquarters of Jordanian intelligence, all located in
    Amman, Jordan;

g.  On November 9, 2005, al-Zarqawi was the most wanted
    man in Jordan, having participated in or master-minded a
    number of violent actions against Iraq, Jordan and United
    States targets.  Indeed, the United States Government had
    offered $25 million for information leading to his capture;

h.  Each defendant knew, or should have known, of specific
    governmental warnings that existed prior to November 9,
    2005 regarding the potential for the bombing of Jordanian
    businesses, including hotels, and of the requirement for
    heightened security including the installation of metal
    detectors and/or x-ray equipment.

8.  On November 9, 2005, Moustapha Akkad was a registered guest at the Grand

Hyatt Amman and was located in the lobby of said hotel when and where Abed detonated the

26

explosives.

9.    On November 9, 2005, Zara and ATIC, and each of them, individually and by and

through their agents and employees, were negligent in one or more of the following respects:

     a.    Permitted and allowed unauthorized individuals and
         explosives easy access to the interior premises of said
         hotel;

     b.    In light of the foreseeability of a terrorist attack on 9/11,
         failed to responsibly protect its guests from criminal attack
         and violence;

     c.    Failed to provide metal detectors and/or x-ray equipment
         when defendants knew, or should have known, said
         equipment was required to insure the safety of its guests;

     d.    Failed to provide adequate security personnel and/or bomb-
         sniffing dogs when defendants knew or should have known
         that heightened security measures were required for the
         protection of its guests.

10.    As a proximate result of one or more of said acts or omissions, which breached

defendants' duty of care to Moustapha Akkad, Moustapha Akkad sustained injuries of a personal

and pecuniary nature prior to his death on November 11, 2005.

11.    Had he survived, Moustapha Akkad would have been entitled to bring a cause of

action on his own behalf, and this action survives him, pursuant to 755 Illinois Compiled

Statutes 5/27-6, commonly known as the Survival Act.

12.    Jeffrey Siegel is the duly appointed Administrator of the Estate of Moustapha

Akkad, deceased, and brings this action pursuant to 755 Illinois Compiled Statutes 5/27-6,

commonly known as the Survival Act.

WHEREFORE, plaintiff, JEFFREY SIEGEL, Administrator of the Estate of

MOUSTAPHA AKKAD, deceased, demands judgment against defendants, ZARA

INVESTMENT (HOLDING) COMPANY and AMMAN TOURISM INVESTMENT

COMPANY, LTD., and each of them, for a sum in excess of the jurisdictional limits to bring this

lawsuit in the Law Division of the Circuit Court of Cook County, Illinois, together with costs

and interests.

COUNT VIII

**Negligence - Personal Injury of Sooha Akkad - Ownership Entities**

Plaintiff, SOOHA AKKAD, complaining of defendants, ZARA and ATIC, states:

1.      On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi

suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman,

Jordan.

2.      Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-

Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.      On and before November 9, 2005, Zara and ATIC, and each of them, individually

and by and through their agents and employees, owned, operated and managed the Grand Hyatt

Amman.

4.      On November 9, 2005, Zara and ATIC, and each of them, individually and by and

through their agents and employees, provided security for the Grand Hyatt Amman.

5.      On November 9, 2005, the Grand Hyatt was one of the few hotels in Amman

totally accessible from the street.

6.      Prior to November 9, 2005, metal detectors had been located at the entrance to the

Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

7.      The bombing which took place at the Grand Hyatt Amman on November 9, 2005,

28

was foreseeable to defendants for the following reasons:

a.   While in America, 9/11 corresponds to September 11th, in the Middle East, the month follows the day, thus, November 9th is noted in Jordan as 9/11;

b.   In 1992, al-Zarqawi was arrested and spent five years in a Jordanian prison for conspiring and threatening to overthrow the monarchy.  He was also arrested for possessing explosives;

c.   Upon release from prison in 1999, al-Zarqawi was involved in an attempt to blow up the Radisson SAS hotel in Amman which is located only 500 yards from the Grand Hyatt;

d.   In 2001, al-Zarqawi was arrested and released in Jordan, however, he was later convicted in absentia and sentenced to death for plotting the bombing at the Radisson SAS in 1999;

e.   On October 28, 2002, Lawrence Foley, a senior U.S. diplomat working for the United States Agency for International Development in Jordan, was assassinated outside his home in Amman by assassins who had been armed and paid by al-Zarqawi.  Al-Zarqawi was again sentenced to death in absentia in Jordan;

f.   In April 2004, Jordanian authorities broke up an al-Zarqawi/al-Qaeda plot to use chemical weapons at the U.S. Embassy, the Jordanian Prime Minister's office and the headquarters of Jordanian intelligence, all located in Amman, Jordan;

g.   On November 9, 2005, al-Zarqawi was the most wanted man in Jordan, having participated in or master-minded a number of violent actions against Iraq, Jordan and United States targets.  Indeed, the United States Government had offered $25 million for information leading to his capture;

h.   Each defendant knew, or should have known, of specific governmental warnings that existed prior to November 9, 2005 regarding the potential for the bombing of Jordanian businesses, including hotels, and of the requirement for heightened security including the installation of metal

29

detectors and/or x-ray equipment.

8.      On November 9, 2005, Sooha Akkad was a registered guest at the Grand Hyatt Amman and was located in the lobby of said hotel when and where Abed detonated the explosives.

9.      On November 9, 2005, Zara and ATIC, and each of them, individually and by and through their agents and employees, were negligent in one or more of the following respects:

   a.  Permitted and allowed unauthorized individuals and explosives easy access to the interior premises of said hotel;

   b.  In light of the foreseeability of a terrorist attack on 9/11, failed to responsibly protect its guests from criminal attack and violence;

   c.  Failed to provide metal detectors and/or x-ray equipment when defendants knew, or should have known, said equipment was required to insure the safety of its guests;

   d.  Failed to provide adequate security personnel and/or bomb-sniffing dogs when defendants knew or should have known that heightened security measures were required for the protection of its guests.

10.     As a proximate result of one or more of said acts or omissions, which breached defendants' duty of care to Sooha Akkad, Sooha Akkad sustained injuries of a personal and pecuniary nature.

WHEREFORE, plaintiff, SOOHA AKKAD, demands judgment against defendants, ZARA INVESTMENT (HOLDING) CO. and AMMAN TOURISM INVESTMENT COMPANY, LTD., and each of them, for a sum in excess of the jurisdictional limits to bring this lawsuit in the Law Division of the Circuit Court of Cook County, Illinois, together with costs and interests.

## COUNT IX

**Negligence - Wrongful Death of Rima Akkad Monla - Ownership Entities**

Plaintiff, SUSAN GITELSON, Special Administrator of the Estate of RIMA AKKAD

MONLA, deceased, complaining of defendants, ZARA and ATIC, states:

1.　　On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi

suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman,

Jordan.

2.　　Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-

Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.　　On and before November 9, 2005, Zara and ATIC, and each of them, individually

and by and through their agents and employees, owned, operated and managed the Grand Hyatt

Amman.

4.　　On November 9, 2005, Zara and ATIC, and each of them, individually and by and

through their agents and employees, provided security for the Grand Hyatt Amman.

5.　　On November 9, 2005, the Grand Hyatt was one of the few hotels in Amman

totally accessible from the street.

6.　　Prior to November 9, 2005, metal detectors had been located at the entrance to the

Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

7.　　The bombing which took place at the Grand Hyatt Amman on November 9, 2005,

was foreseeable to defendants for the following reasons:

　　　　　　a.　　While in America, 9/11 corresponds to September 11th, in
　　　　　　　　　the Middle East, the month follows the day, thus,
　　　　　　　　　November 9th is noted in Jordan as 9/11;

31

b.   In 1992, al-Zarqawi was arrested and spent five years in a Jordanian prison for conspiring and threatening to overthrow the monarchy. He was also arrested for possessing explosives;

c.   Upon release from prison in 1999, al-Zarqawi was involved in an attempt to blow up the Radisson SAS hotel in Amman which is located only 500 yards from the Grand Hyatt;

d.   In 2001, al-Zarqawi was arrested and released in Jordan, however, he was later convicted in absentia and sentenced to death for plotting the bombing at the Radisson SAS in 1999;

e.   On October 28, 2002, Lawrence Foley, a senior U.S. diplomat working for the United States Agency for International Development in Jordan, was assassinated outside his home in Amman by assassins who had been armed and paid by al-Zarqawi. Al-Zarqawi was again sentenced to death in absentia in Jordan;

f.   In April 2004, Jordanian authorities broke up an al-Zarqawi/al-Qaeda plot to use chemical weapons at the U.S. Embassy, the Jordanian Prime Minister's office and the headquarters of Jordanian intelligence, all located in Amman, Jordan;

g.   On November 9, 2005, al-Zarqawi was the most wanted man in Jordan, having participated in or master-minded a number of violent actions against Iraq, Jordan and United States targets. Indeed, the United States Government had offered $25 million for information leading to his capture;

h.   Each defendant knew, or should have known, of specific governmental warnings that existed prior to November 9, 2005 regarding the potential for the bombing of Jordanian businesses, including hotels, and of the requirement for heightened security including the installation of metal detectors and/or x-ray equipment.

8.     On November 9, 2005, Rima Akkad Monla was a guest at the Grand Hyatt

Amman and was located in the lobby of said hotel when and where Abed detonated the

explosives.

9.    On November 9, 2005, Zara and ATIC, and each of them, individually and by and

through their agents and employees, were negligent in one or more of the following respects:

     a.    Permitted and allowed unauthorized individuals and
        explosives easy access to the interior premises of said
        hotel;

     b.    In light of the foreseeability of a terrorist attack on 9/11,
        failed to responsibly protect its guests from criminal attack
        and violence;

     c.    Failed to provide metal detectors and/or x-ray equipment
        when defendants knew, or should have known, said
        equipment was required to insure the safety of its guests;

     d.    Failed to provide adequate security personnel and/or bomb-
        sniffing dogs when defendants knew or should have known
        that heightened security measures were required for the
        protection of its guests.

10.    As a proximate result of one or more of said acts or omissions, which breached

defendants' duty of care of Rima Akkad Monla, Rima Akkad Monla sustained injuries of a

personal and pecuniary nature prior to her death on November 9, 2005.

11.    At the time of her death, Rima Akkad Monla left surviving her the following

heirs: Ziad Monla, her husband; Tarek Monla, her minor son; and Moustapha Monla, her minor

son; all of whom have suffered personal and pecuniary loss as a result of her death.

12.    Susan Gitelson is the duly appointed Special Administrator of the Estate of Rima

Akkad Monla, deceased, and brings this action pursuant to 740 Illinois Compiled Statutes 180/1

*et seq.*, commonly known as the Wrongful Death Act.

WHEREFORE, plaintiff, SUSAN GITELSON, Special Administrator of the Estate of

RIMA AKKAD MONLA, deceased, demands judgment against defendants, ZARA

INVESTMENT (HOLDING) CO. ("ZARA") and AMMAN TOURISM INVESTMENT

COMPANY, LTD., and each of them, for a sum in excess of the jurisdictional limits to bring this

lawsuit in the Law Division of the Circuit Court of Cook County, Illinois, together with costs

and interests.

<u>COUNT X</u>

<u>Negligence - Personal Injury of Michael Butler - Ownership Entities</u>

Plaintiff, MICHAEL BUTLER, complaining of defendants, ZARA and ATIC, states:

1.    On November 9, 2005, Rawad Jassem Mohammed Abed ("Abed"), an Iraqi

suicide bombing militant, set off deadly explosives in the Grand Hyatt Amman, in Amman,

Jordan.

2.    Abed was affiliated with al-Qaeda in Iraq and the Jordanian-born Abu Musab Al-

Zarqawi (a/k/a Ahmed Fadeel al-Nazal al-Khalayleh).

3.    On and before November 9, 2005, Zara and ATIC, and each of them, individually

and by and through their agents and employees, owned, operated and managed the Grand Hyatt

Amman.

4.    On November 9, 2005, Zara and ATIC, and each of them, individually and by and

through their agents and employees, provided security for the Grand Hyatt Amman.

5.    On November 9, 2005, the Grand Hyatt was one of the few hotels in Amman

totally accessible from the street.

6.    Prior to November 9, 2005, metal detectors had been located at the entrance to the

Grand Hyatt Amman, but said detectors were removed by defendants prior to November 9, 2005.

7.    The bombing which took place at the Grand Hyatt Amman on November 9, 2005,

34

was foreseeable to defendants for the following reasons:

a.    While in America, 9/11 corresponds to September 11th, in the Middle East, the month follows the day, thus, November 9th is noted in Jordan as 9/11;

b.    In 1992, al-Zarqawi was arrested and spent five years in a Jordanian prison for conspiring and threatening to overthrow the monarchy. He was also arrested for possessing explosives;

c.    Upon release from prison in 1999, al-Zarqawi was involved in an attempt to blow up the Radisson SAS hotel in Amman which is located only 500 yards from the Grand Hyatt;

d.    In 2001, al-Zarqawi was arrested and released in Jordan, however, he was later convicted in absentia and sentenced to death for plotting the bombing at the Radisson SAS in 1999;

e.    On October 28, 2002, Lawrence Foley, a senior U.S. diplomat working for the United States Agency for International Development in Jordan, was assassinated outside his home in Amman by assassins who had been armed and paid by al-Zarqawi. Al-Zarqawi was again sentenced to death in absentia in Jordan;

f.    In April 2004, Jordanian authorities broke up an al-Zarqawi/al-Qaeda plot to use chemical weapons at the U.S. Embassy, the Jordanian Prime Minister's office and the headquarters of Jordanian intelligence, all located in Amman, Jordan;

g.    On November 9, 2005, al-Zarqawi was the most wanted man in Jordan, having participated in or master-minded a number of violent actions against Iraq, Jordan and United States targets. Indeed, the United States Government had offered $25 million for information leading to his capture;

h.    Each defendant knew, or should have known, of specific governmental warnings that existed prior to November 9, 2005 regarding the potential for the bombing of Jordanian businesses, including hotels, and of the requirement for heightened security including the installation of metal

detectors and/or x-ray equipment.

8.      On November 9, 2005, Michael Butler was a registered guest at the Grand Hyatt

Amman and was located in the lobby of said hotel when and where Abed detonated the

explosives.

9.      On November 9, 2005, Zara and ATIC, and each of them, individually and by and

through their agents and employees, were negligent in one or more of the following respects:

> a.      Permitted and allowed unauthorized individuals and
> explosives easy access to the interior premises of said
> hotel;
>
> b.      In light of the foreseeability of a terrorist attack on 9/11,
> failed to responsibly protect its guests from criminal attack
> and violence;
>
> c.      Failed to provide metal detectors and/or x-ray equipment
> when defendants knew, or should have known, said
> equipment was required to insure the safety of its guests;
>
> d.      Failed to provide adequate security personnel and/or bomb-
> sniffing dogs when defendants knew or should have known
> that heightened security measures were required for the
> protection of its guests.

10.     As a proximate result of one or more of said acts or omissions, which breached

defendants' duty of care to Michael Butler, Michael Butler sustained injuries of a personal and

pecuniary nature.

36

WHEREFORE, plaintiff, MICHAEL BUTLER, demands judgment against defendants,

ZARA INVESTMENT (HOLDING) CO. and AMMAN TOURISM INVESTMENT

COMPANY, LTD., and each of them, for a sum in excess of the jurisdictional limits to bring this

lawsuit in the Law Division of the Circuit Court of Cook County, Illinois, together with costs

and interests.

_____
Thomas A. Demetrio

Thomas A. Demetrio
Michael K. Demetrio
Daniel M. Kotin
William T. Gibbs
**CORBOY & DEMETRIO, P.C.**
33 North Dearborn Street, Suite 2100
Chicago, Illinois  60602
312-346-3191
Firm I.D. No. 02329
*Counsel for Plaintiffs, Jeffrey Siegel, Administrator of the Estate of Moustapha Akkad, deceased;*
*Sooha Akkad, Individually; Susan Gitelson, Special Administrator of the Estate of Rima Akkad*
*Monla, deceased; and Michael Butler*

Browne Greene
Geoffrey S. Wells
**GREENE, BROILLET & WHEELER, LLP**
Attorneys for Plaintiffs
100 Wilshire Road, 21st Floor
Santa Monica, California  90407-2131
310-576-1200
*Co-Counsel for Plaintiffs, Jeffrey Siegel, Administrator of the Estate of Moustapha Akkad,*
*deceased; Sooha Akkad, Individually; and Susan Gitelson, Special Administrator of the Estate of*
*Rima Akkad Monla, deceased*

Michael Weisman
**WEISMAN & MCINTYRE**
99 Summer Street
Suite 2010
Boston, Massachusetts  02110
617-720-2727
*Co-Counsel for Plaintiff, Michael Butler*