**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, Deceased, SOOHA AKKAD, individually; SUSAN GITELSON, Special Administrator of the Estate of RIMA AKKAD MONLA, deceased; and MICHAEL BUTLER, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 07 C 6830 |
| H GROUP HOLDING, INC., a corporation; GLOBAL HYATT CORPORATION, a corporation; HYATT INTERNATIONAL CORPORATION, a corporation; HYATT CORPORATION, a corporation; HYATT HOTELS CORPORATION, a corporation; HYATT INTERNATIONAL (EUROPE AFRICA MIDDLE EAST) LLC; AIC HOLDING CO., a corporation; HYATT INTERNATIONAL HOLDINGS, CO., a corporation; HI HOLDINGS LUXEMBURG S.a.r.l.; ZARA INVESTMENT HOLDING CO.; and AMMAN TOURISM INVESTMENT CO., LTD., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge John W. Darrah

Magistrate Susan E. Cox |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONSOLIDATED
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Defendants H Group Holding, Inc., Global Hyatt Corporation, Hyatt International Corporation, Hyatt Corporation, Hyatt Hotels Corporation, and Hyatt International (Europe Middle East Africa) LLC, (collectively, "Defendants"), through their attorneys, respectfully move this Court to deny Plaintiffs' Motion to Remand and dismiss Plaintiffs' Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and

pursuant to the doctrine of *forum non conveniens*.  In support of their motion, Defendants state as follows:

## I.      INTRODUCTION

On November 9, 2005, suicide bombers shocked the world by almost simultaneously blowing themselves up at three downtown hotels in Amman, Jordan, killing 60 and injuring more than 100 innocent bystanders.  The Grand Hyatt Amman ("the Hotel") was one of the three targeted hotels.   Many Hotel employees were among the victims.   Plaintiffs' decedents, Moustapha Akkad and Rima Akkad Monla, were guests at the Hotel and were among the victims of the terrorists' pre-meditated brutality.  Plaintiffs Sooha Akkad and Michael Butler were also injured in the attack.  In their Amended Complaint, Plaintiffs attempt to blame Defendant Hyatt (Europe Africa Middle East) LLC ("Hyatt EAME") and ten other American and foreign entities for the carnage, alleging Defendants failed to protect them from these coordinated suicide bombings.  *See* Am. Compl. ¶ 13 of Counts I-V, attached as Exhibit A.

Plaintiffs filed this action in the Circuit Court of Cook County, Illinois, initially against only two American defendants, Global Hyatt Corporation ("Global Hyatt") and Hyatt International Corporation ("Hyatt International").  *See* Compl., attached as Exhibit B.  Global Hyatt and Hyatt International moved to dismiss the complaint on the grounds that, *inter alia*, neither Global Hyatt nor Hyatt International owned, operated, or managed the Hotel.  Plaintiffs then amended their complaint, adding additional plaintiffs and additional defendants, including H Group Holding, Inc., Hyatt Corporation, Hyatt Hotels Corporation ("Hyatt Hotels"), and Hyatt EAME.[1]  Hyatt EAME removed the case to this Court, which has diversity jurisdiction over this

---

[1] Plaintiffs served only Global Hyatt and Hyatt International in the state court action.  Hyatt EAME accepted service of the Amended Complaint on December 4, 2007.  Hyatt Corporation, Hyatt Hotels, and H Group were also served in December and join this motion.  "Defendants" refers only to Global Hyatt, Hyatt International, Hyatt Corporation, Hyatt Hotels, Hyatt EAME, and H Group.

matter despite the presence of several Illinois co-defendants ("the Illinois Defendants").[2] *See* Notice of Removal, filed on December 4, 2007.

As set forth in detail below, Plaintiffs have no possibility of recovering against any of the Illinois Defendants because uncontested facts conclusively demonstrate that Plaintiffs cannot state a cause of action against them under Illinois law.  None of the Illinois Defendants ever owned, operated, or managed the Hotel.  Consequently, Plaintiffs cannot establish that these Defendants owed a duty to them.  Nor can Plaintiffs establish a cause of action against the Illinois Defendants under a theory of direct participation liability.  Thus, Plaintiffs' joinder of the Illinois Defendants is fraudulent and cannot defeat diversity jurisdiction, and the Illinois Defendants should be dismissed from this action.

Furthermore, this Court does not have personal jurisdiction over Hyatt EAME.  Hyatt EAME, a Swiss corporation with its principal place of business in Switzerland, does not have sufficient contacts with Illinois to bring it within the jurisdiction of Illinois courts or Federal court located in Illinois.  Because this Court lacks personal jurisdiction over Hyatt EAME, the case against Hyatt EAME should be dismissed.

Moreover, although the Court does have subject matter jurisdiction over this case, the Amended Complaint should be dismissed in its entirety under *forum non conveniens* because the bombing occurred, and the evidence and witnesses are all located, in Amman, Jordan.  Jordan is an adequate alternative forum for this dispute.  In fact, other persons injured in the bombing have already filed pending lawsuits for damages in Jordan.  Illinois is completely unconnected to this terrorist event and is an inconvenient and impractical forum for this case.

---

[2] The Illinois Defendants are: H Group; Global Hyatt; Hyatt International; Hyatt Corporation; and Hyatt Hotels.

Finally, the Amended Complaint should be dismissed on substantive grounds for failure to state a claim upon which relief may be granted. Although it is understandable human nature for victims and victims' families to try to allocate blame for these senseless acts of violence, Illinois law carefully carves out very limited circumstances under which crime victims can state a cause of action for failure to prevent a third-party criminal attack.[3] Plaintiffs' allegations do not establish a cause of action for negligence. For the reasons stated above, Defendants respectfully urge this Court to deny Plaintiffs' Motion to Remand and dismiss Plaintiffs' Amended Complaint against Defendants.

## II.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE CASE BASED ON COMPLETE DIVERSITY OF CITIZENSHIP.

Hyatt EAME is a Swiss business entity organized and having its principal place of business in Switzerland. Plaintiffs allege that Hyatt EAME managed the Hotel pursuant to a written contract with the Jordanian co-defendant who owned the Hotel, Amman Tourism Investment Co., Ltd. ("Amman Tourism" or "the Owner"). Plaintiffs sued five Delaware corporations whose principal places of business are in Illinois. On December 4, 2007, Hyatt EAME filed its timely Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because there is complete diversity of citizenship between the properly-named parties and the amount in controversy is in excess of $75,000. On January 3, 2008, Plaintiffs filed their Motion to Remand, arguing that the Illinois Defendants were properly joined and that this Court does not have diversity jurisdiction over the action. Pls.' Mot. to Remand at 10, filed on January 3, 2008. Contrary to the Plaintiffs' assertions, however, Hyatt EAME can meet its burden of establishing

---

[3] Defendants do not concede that a proper conflict-of-laws analysis would result in the application of Illinois substantive law. Although Plaintiffs' Amended Complaint is silent as to the governing law, the site of bombing and the place where the Plaintiffs and Plaintiffs' decedents suffered their injuries was Amman, Jordan. Thus, a Jordanian court should interpret and apply Jordanian law to this dispute. However, because Plaintiffs filed their lawsuit in Illinois, for purposes of this motion only, Defendants will demonstrate that the Amended Complaint fails to state a claim under Illinois substantive law.

fraudulent joinder and does so here by presenting uncontradicted evidence regarding the ownership and management of the Hotel and the corporate structure underlying the distantly related Illinois Defendants that have been "fraudulently joined."   Because this Court has the authority to dismiss parties who have been fraudulently joined, Hyatt EAME respectfully requests that this Court dismiss the Illinois Defendants from this action.  *Faucett v. Ingersoll-Rand Min. & Machinery Co.*, 960 F.2d 653, 654 (7th Cir. 1992).

### A.    The Uncontroverted Facts Conclusively Demonstrate That Plaintiffs Cannot State a Cause of Action Against the Illinois Defendants Under Illinois Law.

Under 28 U.S.C. § 1441(b), an action is only removable "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action in brought."   Although five of the named defendants are Illinois citizens, for the purpose of diversity of citizenship, this Court disregards non-diverse parties that have been fraudulently joined.  *See Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).   Joinder is "fraudulent," and thus will not defeat diversity jurisdiction, where "there is no possibility that a plaintiff can state a cause of action" against the defendant in question in state court, or "where there has been outright fraud in the plaintiff's pleading of jurisdictional facts."  *Gottlieb*, 990 F.2d at 327; *see also Bodine's Inc. v. Fed. Ins. Co.*, 601 F. Supp. 47, 48-49 (N.D. Ill. 1984) (remarking that "[i]t is axiomatic that the right to remove a diversity action 'cannot be defeated by a fraudulent joinder if a resident defendant [has] no real connection with the controversy'") (quoting *Chesapeake & Ohio Ry. v. Cockrell*, 232 U.S. 146, 152 (1914)).

As the non-resident Defendant seeking to remove this case to federal court, Hyatt EAME bears the burden of establishing that there is no "reasonable possibility" that Plaintiffs can establish a cause of action against the Illinois Defendants in Illinois state court.  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992).  When a removing party meets its burden, a court

must disregard the citizenship of the fraudulently joined party.  *Gottlieb*, 990 F.2d at 327. A non-resident defendant seeking to remove a matter to federal court may meet its burden of proving that a plaintiff has no chance of succeeding against an in-state defendant by introducing uncontradicted evidence.  *Faucett*, 960 F.2d at 655 (finding that the uncontradicted affidavit of the non-diverse defendant attesting to facts showing that the plaintiff could not establish a cause of action against it under state law was sufficient to establish fraudulent joinder).

In their motion to remand, Plaintiffs baldly allege that the Illinois Defendants were aware of the potential terrorist threat against the Grand Hyatt Amman and abandoned safeguards that would have prevented the suicide bombing, proximately causing Plaintiffs' injuries.  *See* Pls.' Mot. to Remand at 5.  Although these allegations may conceivably state a cause of action against the Hotel's owners, operators, and managers—parties who may have owed a duty of care under Illinois law—Plaintiffs do not state a cause of action against the Illinois Defendants because none of the five entities owned, operated, or directly participated in the supervision and management of the Hotel.  In order to resolve the jurisdictional issue in this case, this court may "'pierce the pleadings' and consider 'summary judgment-type evidence such as affidavits and deposition testimony.'"[4]  *Peters v. AMR Corp.*, 1995 WL 358843, at *3 (N.D. Ill. June 13, 1995) (quoting *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)); *see also Faucett*, 960 F.2d at 655.  As the attached affidavit of Mary Turilli (Exhibit C) demonstrates, Plaintiffs stand no chance of succeeding against the Illinois Defendants under any theory of liability.  None of the Illinois Defendants was an owner, operator, or manager of the Hotel.  Because the uncontroverted evidence—even construed in a light most favorable to Plaintiffs—demonstrates

---

[4] Although Plaintiffs insist that Defendants' fraudulent joinder argument merely denies the material allegations in the Amended Complaint, *see* Pls.' Mot. to Remand at 6, the Turilli affidavit on which Defendants' rely does not address the merits of the case.  Rather, the affidavit offers jurisdictional facts that this Court may properly consider and which warrant the summary dismissal of the Illinois Defendants.  *See Peters v. AMR Corp.*, 1995 WL 358843, at *4 (N.D. Ill. June 13, 1995).

that Plaintiffs have no reasonable possibility of sustaining a claim against these remote Illinois Defendants under Illinois state law, Hyatt EAME has met its burden of establishing fraudulent joinder and Plaintiffs' motion to remand must be denied.

### 1.    The Illinois Defendants Did Not Own, Operate, or Manage the Hotel.

Plaintiffs have failed to plead any facts to support their incorrect conclusion that the Illinois Defendants owned, operated, or managed the Grand Hyatt Amman. Am. Compl. Ex. A ¶ 7 of Counts I-V. The affidavit of Mary Turilli proves that the opposite is true. None of the Illinois Defendants have ever owned, operated, or managed the Hotel. Turilli Aff. Ex. C at ¶ 2. To the contrary, the owner of the Hotel is Defendant Amman Tourism, a Jordanian company in which none of the Illinois Defendants, directly or indirectly, hold any interest. *Id.* In fact, the Illinois Defendants either have no corporate ties to, or are mere corporate affiliates several times removed from, the Swiss Hyatt entity that signed the Management Agreement with Amman Tourism: Hyatt EAME. Ex. C at ¶¶ 2-7. Hyatt EAME is a distant and distinct corporate relative of Defendant Hyatt International and is even further removed from Defendant Global Hyatt. Ex. C at ¶¶ 2-3, 6. Hyatt EAME is not even a distant indirect parent or subsidiary of Hyatt Corporation or Hyatt Hotels. Ex. C at ¶¶ 3, 6-7. Finally, Hyatt EAME has no corporate relationship with H Group whatsoever. Ex. C at ¶ 3, 5. Because none of the Illinois Defendants owned, operated, or managed the Hotel, none of the Defendants could owe a duty, special or otherwise, to Plaintiffs or Plaintiffs' decedents. *See infra* Section A.2.

Furthermore, Plaintiffs cannot state a claim against any of the Illinois Defendants under a veil-piercing theory. Under Illinois law, a parent corporation can only be held liable for the acts of its subsidiary if the subsidiary is a mere instrumentality or alter ego of its parent and preserving the corporate structure would sanction fraud or promote injustice. *Van Dorm*

*Furniture Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985). As explained in the Turilli Affidavit, Hyatt EAME complies with all corporate formalities, maintains its own books and records, is governed by a separate Board of Directors (in Switzerland, called a Board of Managers), and does not co-mingle assets with any of its corporate relatives. Turilli Aff. Ex. C at ¶¶ 9-12; *see Sea-Land Servs., Inc. v. The Pepper Source*, 941 F.2d 519, 521 (7th Cir. 1991) (analyzing the unity of interest and ownership test under Illinois law). Plaintiffs, on the other hand, do not allege a single fact that would justify piercing the corporate veil in this case. Thus, even if Plaintiffs could sustain a cause of action against Hyatt EAME for entering into the Management Agreement with the Owner of the Hotel, Plaintiffs cannot state a cause of action against any of the Illinois Defendants. *See Brown v. Panasonic Corp.*, No. 06-C-0267, 2006 WL 1388890, at *2-3 (S.D. Ill. May 18, 2006) (denying motion to remand after finding that parent corporation was fraudulently joined where no evidence suggested that the parent dominated the subsidiary); *Kocot v. Alliance Mach. Co.*, 651 F. Supp. 226, 228 (S.D. Ill. 1986) (concluding that joinder of parent company was fraudulent where plaintiff "failed to rebut defendant's interrogatories stating that . . . [the subsidiary] was operated as a separate and distinct corporation").

        **2.**     **Plaintiffs Cannot Establish a "Special Relationship" with the Illinois Defendants.**

Plaintiffs claim that their "Amended Complaint adequately pleads an affirmative duty owed by the hotel owners and operators under Illinois law" in the context of a remand motion. Pls.' Mot. to Remand at 8. But the Illinois Defendants are not owners or operators of the Hotel. Plaintiffs' bald allegation otherwise must be rejected in light of the Turilli Affidavit. The Turilli Affidavit proves that Plaintiffs cannot plead any facts to establish that any of the Illinois Defendants ever owned, operated, or managed the Hotel. Furthermore, Plaintiffs have failed to

cite a single case in which a parent corporation was held liable for its subsidiary's breach of duty. Accordingly, Plaintiffs can never allege that the Illinois Defendants had a "special relationship" with Plaintiffs or Plaintiffs' decedents and, therefore, can never allege that these Illinois Defendants had a duty to protect them from third-party criminal attacks under Illinois law. *See Hernandez v. Home Depot, U.S.A., Inc.*, No. 05-C-5963, 2006 WL 1647438, at *2 (N.D. Ill. June 5, 2006) (denying plaintiff's motion for remand because defendant's affidavit established that the non-diverse defendant "never owned, possessed, operated, controlled, or maintained the property on which plaintiff was injured and thus [could] owe no duty to the plaintiff"). Because Plaintiffs cannot demonstrate that the Illinois Defendants owed a duty to Plaintiffs or Plaintiffs' decedents, Plaintiffs can never state a claim against the Illinois Defendants for failing to protect them from terrorist attacks at the Hotel. *See Katonah v. USAir*, 876 F. Supp. 984, 987 (N.D. Ill. 1995) (explaining that the existence of a duty depends on whether a relationship exists between the parties).

### 3.    Plaintiffs Cannot Establish a Cause of Action Against the Illinois Defendants Under the Theory of Direct Participation Liability.

Lastly, Plaintiffs attempt to defeat removal jurisdiction by alleging that the Illinois Defendants are liable under the direct participation theory. Pls.' Mot. to Remand at 8-10; *see Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227 (Ill. 2007). This argument too is meritless. In Illinois, a parent company may be held liable as a direct participant if it negligently directs or authorizes its subsidiary's acts and the subsidiary's acts cause foreseeable injuries to the plaintiff. *Id.* at 237-38. "The key elements to the application of direct participant liability, then, are a parent's specific direction or authorization of the manner in which an activity is undertaken and foreseeability." *Id.* at 237. The only evidence that Plaintiffs offer in support of this theory is the Management Agreement for the Hotel, which says that "the Grand Hyatt Amman's general

manager should be equipped with [Hyatt International's] policies and systems and procedures manuals." Pls.' Mot. to Remand at 9. A mere reference to Hyatt International's procedural manuals as a benchmark does not make Hyatt International a participant in the management of the Hotel. Plaintiffs' argument incorrectly equates the generation of a general policy and procedure manual with the direct participation in the operation and management of the Hotel with respect to their claim.

The Northern District of Illinois recently addressed direct participation liability in a strikingly similar factual context. In *Santora*, the plaintiff filed a complaint against several entities after sustaining injuries at an Italian hotel, including one Illinois defendant, Starwood, a distant corporate parent of the hotel's owners and operators.[5] *Santora v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 05-C-6391, 2007 WL 3037098, at *1 (N.D. Ill. Oct. 16, 2007). The plaintiff alleged that Starwood required its subsidiary "to operate the Hotel pursuant to Starwood's overall business strategy and pursuant to a set of operating standards for [its] line of hotels." *Id.* at 6. The court rejected the plaintiff's argument that the specificity of the operating standards evinced the parent's "direct participation in the day-to-day activities of the Hotel," making the parent liable under a direct participation theory. *Id.* As in *Santora*, Plaintiffs have not and cannot maintain a claim for direct participation liability against the Illinois Defendants because Plaintiffs cannot establish that the Hotel's Management Agreement, Hyatt International's policies, or the systems and procedures manuals contributed to their injuries. Moreover, Plaintiffs fail to allege that these policies and procedures could have foreseeably led to the November 2005 terrorist attack on the Hotel. Thus, because Plaintiffs have offered no

---

[5] Illinois Defendant "Starwood owned 100% of the stock in Sheraton International, Inc., which in turn wholly-owned Sheraton Hotels Italia, which, in turn, owned 100%" of the Italian companies who owned and operated the hotel at which the slip-and-fall incident occurred. *Santora v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 05-C-6391, 2007 WL 3037098, at *1 (N.D. Ill. Oct. 16, 2007).

evidence that the Illinois Defendants exercised any control over the operations and management of the Hotel, let alone directed its security decisions, Plaintiff cannot maintain a claim for direct participation liability under Illinois law.  *See also Sandage v. Cottrell, Inc.*, No. 05-C-0720, 2006 WL 2710647, at *6-7 (S.D. Ill. Sept. 20, 2006) (finding parent company fraudulently joined where plaintiffs presented no evidence suggesting that the parent was involved in the activities from which plaintiffs' injuries arose and where plaintiff failed to establish that direct participation liability applied to the case).

**B.     Hyatt EAME Has Met Its Burden of Establishing Fraudulent Joinder.**

Because Plaintiffs cannot allege a cognizable cause of action against the Illinois Defendants or state a claim upon which relief can be granted, Hyatt EAME has met its burden of proving that Plaintiffs fraudulently joined the Illinois Defendants and that the Court should dismiss the claims against the Illinois Defendants.  Based on the allegations in their Amended Complaint and Motion to Remand, Plaintiffs have no chance of recovering against any of the Illinois Defendants in state court.  Plaintiffs' allegations are bare conclusory assertions that are utterly devoid of any factual predicate.  *See* Pls.' Mot. to Remand at 4.  If a plaintiff's mere *ipse dixit* that a non-diverse defendant is liable for his injuries were sufficient to defeat removal, then § 1441(b) would be completely ineffectual and this Court would be powerless to protect its rightful jurisdiction.  *See Poulos*, 959 F.2d at 74 (remarking that if mere assertions of control were sufficient, then a plaintiff "could defeat diversity jurisdiction by joining his grandmother as a defendant" and denying plaintiffs' motion to remand).  Because the Illinois Defendants have no connection to the controversy, their joinder cannot defeat removal and Plaintiffs' attempt to remand this case to state court must fail.

## III.    THIS COURT LACKS PERSONAL JURISDICTION OVER HYATT EAME.

This Court should dismiss the complaint under F.R.C.P. 12(b)(2) against Hyatt EAME because the Swiss corporation lacks sufficient minimum contacts with the State of Illinois to bring it under this Court's jurisdiction.  Plaintiffs bear the burden of proving that this Court has personal jurisdiction over Hyatt EAME.  *RAR, Inc. v. Turner Diesel, Ltd*., 107 F.3d 1272, 1276 (7th Cir. 1997).   In a diversity case, a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction.  *Id*. at 1275.  For an Illinois court to have personal jurisdiction over a nonresident defendant, personal jurisdiction must be permitted by:  (1) Illinois statutory law; (2) the Illinois Constitution; and (3) the Constitution of the United States.  *Id*. at 1276.  The Illinois long-arm statute extends personal jurisdiction to the limit allowed under the due process clauses of the Illinois and United States Constitutions.  735 ILCS § 5/209(c) (West 2007); *RAR*, 107 F.3d at 1276.  Because there is currently "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," the three requirements for personal jurisdiction collapse into a single analysis.  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 780, 787 (7th Cir.2003).

Federal due process requires that a defendant have sufficient minimum contacts with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Id.* at 713 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Thus, a court will only find personal jurisdiction to be reasonable and fair where a defendant should "reasonably anticipate being haled into court" there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  The "minimum contacts" standard depends upon whether the forum state is asserting "general" or "specific" jurisdiction.  *RAR*, 107 F.3d at 1277.  Plaintiffs cannot establish that Hyatt EAME had sufficient contacts with Illinois to satisfy either

the "general" or "specific" standard.  In addition, haling the Swiss corporation into an Illinois court would be unfair and unjust.  Accordingly, this Court should dismiss Plaintiffs' claims against Hyatt EAME for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### A.     Hyatt EAME Has Insufficient Contacts with Illinois to Support General Jurisdiction.

An Illinois court may properly exercise general jurisdiction over a nonresident defendant who has "continuous and systematic general business contacts" with the state, even in cases that do not arise out of and are not related to the defendant's contacts with the forum.  *RAR*, 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  Thus, this Court may assert general jurisdiction over Hyatt EAME only if Plaintiffs can prove the Swiss corporation maintained "continuous corporate operations within [Illinois] . . . so substantial and of such nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945); *see also Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1024 (N.D. Ill. 2004).  Plaintiffs cannot establish that Hyatt EAME has minimum contacts, much less continuous and systematic contacts, with Illinois.  Hyatt EAME's only remote connection with Illinois—via its corporate affiliations—is far too attenuated to support general jurisdiction.

Hyatt EAME is Swiss corporation with a principal place of business in Switzerland.  It is not licensed to do business in Illinois, and it has no offices, employees, bank accounts, or real property in the state.  Turilli Aff. Ex. C at ¶ 8.  Hyatt EAME has not advertised or solicited business in Illinois, nor has it designated an agent for service of process in the state.  *Id.* Consequently, Plaintiffs cannot and do not allege any basis for the exercise of general jurisdiction over Hyatt EAME by an Illinois court.  For example, Plaintiffs have not asserted that

Hyatt EAME maintained a website or conducted a U.S. advertising campaign that reached Illinois citizens. Neither of the these marketing devices, or even a combination of the two, however, would constitute a sufficient basis for general jurisdiction. *Breschia v. Paradise Vacation Club, Inc.*, No. 02-C-3014, 2003 WL 22872128, at *12 (N.D. Ill. Dec. 4, 2003) (explaining that a website on which customers can make hotel reservations and exchange credit card information, even accompanied by national advertising, "is not a continuous and systematic contact with Illinois"); *see also Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F. Supp. 2d 1082, 1091 (E.D. Mo. 2001) (remarking that subjecting a hotel, which neither directly advertises nor solicits business in a forum state, to general jurisdiction based on a website "would turn the notion of federal personal jurisdiction on its head").

Hyatt EAME's only remote connection to Illinois is through a chain of remote parents. Turilli Aff. Ex. C ¶ 6-7. The Swiss corporation is five-times removed from its closest Illinois relative. *Id.* at ¶ 6. This remote corporate affiliation is an insufficient basis for the exercise of general jurisdiction over Hyatt EAME. Generally, "personal jurisdiction cannot be premised on corporation affiliation or stock ownership" where circumstances would not justify piercing the corporate veil. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *see also Integrated Bus. Info. Serv., Ltd. v. Dun & Bradstreet Corp.*, 714 F. Supp. 296, 299 (N.D. Ill. 1989) (explaining that the existence of a "parent-subsidiary relationship is insufficient to confer personal jurisdiction"). Under Illinois law, the Hyatt companies' corporate veils cannot be pierced absent a showing of "unity of interest and ownership." *Van Dorn*, 753 F.2d at 569.

Because Hyatt EAME and its parent companies observe corporate formalities, do not commingle funds or assets, and maintain separate corporate personalities, Turilli Aff. Ex. C at

¶¶ 9-12, Plaintiffs cannot establish such unity of interest and ownership exists, s*ee Van Dorn*, 753 F.2d at 570.  Using the activities of the other distant Hyatt entities as a basis for personal jurisdiction over Hyatt EAME would violate due process.  Accordingly, this Court cannot assert general jurisdiction over Hyatt EAME based on its corporate relationships.  *Cent. States*, 230 F.3d at 944; *see also Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998) (dismissing complaint of plaintiff attacked in a Kentucky hotel against the hotel operator's foreign parent company where parent was not involved in the operation of the hotel).  Simply put, Plaintiffs have not and cannot offer any evidence that Hyatt EAME has any continuous and systematic business activity in Illinois, and, therefore, they have no basis for urging this Court to assert general jurisdiction over the Defendant.

**B.    Because Plaintiffs' Claims Have No Nexus to Illinois Contacts, Specific Jurisdiction Is Also Lacking.**

In the context of specific jurisdiction, the "minimum contacts" standard is satisfied where a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and the litigation arises from injuries caused by those activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).  Thus, in order for this Court to assert specific jurisdiction over Hyatt EAME, Plaintiffs must prove that their claims arise out of or are related to the Defendant's intentional contacts with Illinois.  *RAR,* 107 F.3d at 1277.  Plaintiffs have not and cannot offer any facts demonstrating that Hyatt EAME directed its activities toward Illinois.  Moreover, any jurisdictional allegations on which Plaintiffs could conceivable rely are not related to Plaintiffs' injuries.

In their complaint, Plaintiffs allege that Hyatt EAME breached its duty of care by failing to prevent a suicide bombing in a Jordanian hotel.  *See., e.g.*, Am. Compl. Ex. A ¶¶ 13-14 of Counts I-V.  None of the Plaintiffs reside in Illinois.  Thus, even if Plaintiffs could somehow

establish that Hyatt EAME purposefully directed its activities at Illinois residents, the crucial nexus between the Defendant's contacts with the state and Plaintiffs' claims is absent. Therefore, any contacts that Hyatt EAME may have with Illinois cannot form the basis for specific jurisdiction.

### C.     The Exercise of Personal Jurisdiction Over Hyatt EAME by Illinois Would Be Unreasonable and Unfair.

Finally, whether the exercise of jurisdiction over a defendant is reasonable and fair depends on the evaluation of the interests of the forum state, the plaintiff's interest in obtaining relief, and the burden on the defendant. *Asahi Metal Indus. Co. v. Super. Ct. of California, Solano County*, 480 U.S. 102, 113 (1987). Weighing these factors, this Court's assertion of jurisdiction over Hyatt EAME would exceed "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. 316. Furthermore, because none of Plaintiffs are Illinois residents, the balance tips even farther in favor of dismissal. In a contract dispute involving a Texas defendant sued in Illinois by a California plaintiff, for example, the court held that asserting personal jurisdiction over the defendant would be "completely inappropriate." *Infiniti Div. of Nissan Motor Corp. of U.S.A. v. Gunn Infiniti, Inc.*, No. 93-C-7846, 1994 WL 374254, at *3 (N.D. Ill. July 14, 1994). In its ruling, the court emphasized Illinois's lack of interest in the matter: "Neither party is a citizen of Illinois; the contract was neither negotiated, executed nor performed in Illinois; the alleged breach occurred outside of Illinois; . . . and there are no public policy considerations which support an inference that Illinois has even a remote interest in the outcome of this litigation." *Id.* at *4. The court also gave considerable weight to the considerable burden on the out-of-state defendant, who "had no office or other presence in Illinois, and would have to undergo considerable expense if the case were tried" in Illinois. *Id.*

Likewise, in the case at bar, this Court's assertion of jurisdiction over the Hyatt EAME "would fly in the face of traditional notions of fairness." *Id.* Illinois's interest in the exercise of jurisdiction over the Swiss corporation is non-existent. All transactions involving Plaintiffs and Hyatt EAME, if any, occurred outside of the state, and the terrorist bombing that caused Plaintiffs' injuries occurred in Jordan. Furthermore, because none of Plaintiffs are Illinois residents, they have no legitimate interest in obtaining relief in Illinois. Finally, the burden on Hyatt EAME would be severe. First, it would be forced to travel between its headquarters in Switzerland and Illinois. Additionally, it would be forced to defend itself in a foreign legal system. This burden on the Defendant alone weighs heavily against finding this Court has personal jurisdiction over Hyatt EAME. *See Asahi Metal*, 480 U.S. at 114 (explaining the unique burdens placed upon an alien defendant forced to litigate in a foreign legal system "should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national boarders"); *Wiles v. Morita Iron Works Co.*, 530 N.E.2d 1382, 1386 (Ill. 1988) (stressing that the burden of litigating in a foreign jurisdiction should be the primary concern when an international defendant is involved).

Thus, considering the international context, the heavy burden on Hyatt EAME, the lack of interest to Plaintiffs or the forum state, and Plaintiffs' failure to establish sufficient minimum contacts to satisfy due process, the exercise of personal jurisdiction by this Illinois court over Hyatt EAME would be unreasonable and unfair. *See Soper v. Jurid Werke GmbH*, No. 89-C-6248, 1990 WL 119414, at *3 (N.D. Ill. Aug. 10, 1990) (concluding that "[b]ecause of the large geographical distance, the difference in language, the difference in legal systems, and the lack of contacts with the state of Illinois, a large burden would be imposed on [the German] defendants were this court to exercise jurisdiction" in a personal injury case). Therefore, pursuant to

F.R.C.P. 12(b)(2), Hyatt EAME respectfully urges this Court to dismiss Plaintiffs' complaint against it for lack of personal jurisdiction.

## IV.    THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER *FORUM NON CONVENIENS.*

Although this Court should dismiss the claims against the Illinois Defendants and Hyatt EAME for the reasons set forth above, Defendants urge this Court to dismiss the Amended Complaint in its entirety based on the doctrine of *forum non conveniens*. "The principle of *forum non conveniens* comes down to this: a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the conveniences of the parties and the ends of justice." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997) (affirming district court's dismissal of fraud and tort claims based on *forum non conveniens* grounds where witnesses were located in Saudi Arabia). This case arises from a suicide bombing in Amman, Jordan in 2005. If tried in Illinois, this case would impose a tremendous burden on the parties and witnesses, not to mention commitment of judicial time and resources, to overcome language barriers and translation issues, summon witnesses and evidence located in Jordan, and construe Jordanian law. There can be no less convenient a location for this case than Illinois. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) ("The central purpose of the *forum non conveniens* inquiry is to ensure that the trial is convenient").

### A.    Jordan is an Available and Adequate Forum.

A threshold requirement of a *forum non conveniens* motion is whether an adequate alternative forum is available. *Kamel*, 108 F.3d at 802-3. "This is a two-part inquiry: availability and adequacy. An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction. An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Id.* (citations omitted); *see also Piper*, 454

U.S. at 255 n.22 (the relevant inquiry is whether the remedy available in the alternative forum is "clearly unsatisfactory"); *Macedo v. Boeing Co.*, 693 F.2d 683, 687 (7th Cir. 1982).

Here, there is no question that an adequate Jordanian forum is available. Hyatt EAME is amenable to service of process in Jordan, as are the Jordanian Owners of the Hotel. *See* Affidavit of Jordanian Attorney Firas Ibrahim Bakr Ibrahim ¶ 5, attached as Exhibit D. Moreover, Jordanian courts recognize civil negligence causes of action seeking damages for personal injury and wrongful death like those alleged in the Amended Complaint. Ex. D at ¶ 3. That court system includes two courts of appeal, with the first level being an appeal of right. Ex. D at ¶ 4.

The best and indisputable proof that Jordan is an available adequate forum is the fact that other bombing victims *have already sued* the Hotel Owner *in the Jordanian court system*, asking for the same types of damages for personal injuries and loss of loved ones as Plaintiffs here. The Jordanian owners are currently defending those lawsuits in the Jordanian court system. *See* Ex. D at ¶ 6; Copies of Translations of Jordanian Court Complaints, attached as Group Exhibit E.

**B.    Plaintiffs' Choice of Forum is Entitled to Little Deference.**

Where the plaintiff is not a resident of the chosen forum, plaintiff's choice of forum is afforded little deference. *Piper*, 454 U.S. at 255-6; *see also Macedo*, 693 F.2d at 688 ("Courts routinely give less weight to a foreign plaintiff's choice of forum."). Because the *forum non conveniens* ultimate inquiry is the convenience of the forum, little deference is given to a foreign plaintiff's choice of forum since that forum is no more convenient to the plaintiff than any other forum. *Piper*, 454 U.S. at 256 ("Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."); *see also Kamel*, 108 F.3d at 803 (giving less deference to plaintiff's choice of

forum where suit was filed by a "foreign plaintiff injured in a foreign land filing suit against an American corporation with extensive foreign dealings"). Here, none of Plaintiffs is an Illinois resident, and their perplexing choice of Illinois as a forum should be afforded little deference.

###    C.    Private and Public Interest Factors Favor Jordan.

Courts consider a variety of private and public interest factors in deciding *forum non conveniens* motions. *In re Ford Motor Co.*, 344 F.3d 648, 652 (7th Cir. 2003). The relevant private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; and (3) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Bridgestone/Firestone, Inc.*, 420 F.23d 702, 704 (7th Cir. 2005) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)). At this stage in the case, witness identification is still uncertain, but it is highly unlikely that any witnesses to the 2005 suicide bombings in Amman, Jordan, are located here in Illinois. Most of the witnesses to the bombing are in Jordan or elsewhere in the Middle East. Certainly most, if not all, of the physical evidence, including relevant documents, is located at the Hotel in Amman, Jordan, and was owned by Jordanians or collected by the Jordanian officials. Relevant documents will undoubtedly be in Arabic and require translation.

Obtaining attendance of those Jordanian witnesses, whether unwilling or willing, will be costly, time consuming, and burdensome. Jordan is not a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, nor is Jordan a signatory to any international convention pertaining to judicial assistance in U.S.-based litigation. *See* Obtaining Evidence in Jordan, US Dept. of State, http://travel.state.gov/law/info/judicial/judicial_675.html (last visited on January 14, 2008), attached as Exhibit F. The State Department notes that willing

witnesses in U.S.-based lawsuits may be deposed in Jordan, but commercial stenographer services are not available in Jordan, thus requiring the lawyers, a stenographer and an Arabic translator to obtain the necessary visas to travel to Jordan to depose even willing witnesses. *See* Ex. F. Unwilling witnesses can only be compelled through letters rogatory, which the State Department does not recommend and notes can take more than a year since local Jordanian authorities are generally unfamiliar with the process. *See id.* Letters rogatory must be in Arabic and should be triple-certified. *See id.* These procedural hurdles combined with the language barriers makes obtaining evidence in a U.S. based lawsuit in Jordan extremely costly, incredibly time consuming, and unavoidably inconvenient.

The public interest factors also favor Jordan. The relevant public interest factors are: (1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Kamel*, 108 F.3d at 803 (citing *Piper*, 454 U.S. at 241 n.6).

First, the already congested docket of the Northern District of Illinois should not be overburdened with the trial of this matter which is (1) completely unconnected to this forum, and (2) will no doubt take far longer than the typical personal injury case in light of the procedural hurdles outlined above. *See Macedo*, 693 F.2d at 690. Moreover, Jordan has a far greater interest in resolving a dispute arising from a suicide bombing on its soil than does any state in the United States, much less Illinois. Because Illinois has no interest in this dispute—the bombing did not occur here and none of Plaintiffs and none of the proper defendants reside here—it would

be unfair to force an Illinois jury to sit through a lengthy trial, with much of the testimony and documents in Arabic, to make findings of fact related to a suicide bombing thousands of miles away in Jordan.

Finally, although Defendants have not undertaken a thorough conflict of laws analysis at this point, it is unlikely that Illinois law will apply to a wrongful death action stemming from a suicide bombing in Jordan.  It is more likely that the Court will need to apply and construe Jordanian law in order to adjudicate this dispute.[6]

Considering these public and private factors together leads to but one conclusion:  an Illinois trial of this Jordanian dispute would be inconvenient, impractical, and virtually impossible.  Jordan is the most logical and convenient forum for this dispute.  As a result, the Amended Complaint must be dismissed under *forum non conveniens.*

## V.    PLAINTIFFS CANNOT PLEAD A CAUSE OF ACTION FOR THE PREVENTION OF UNPREDICTABLE THIRD-PARTY CRIMINAL ACTS.

Finally, the Defendants urge this Court pursuant to F.R.C.P. 12(b)(6) to dismiss the Amended Complaint in its entirety because it fails to state a claim upon which relief can be granted against any of the named defendants.  Plaintiffs have not and cannot plead facts sufficient to establish a cause of action against any of the eleven defendants for failure to prevent the suicide bombing attack on the Hotel.  To adequately state a cause of action, Plaintiffs must establish the existence of a duty of care that Defendants owed to Plaintiffs or Plaintiffs'

---

[6] In deciding choice-of-law questions in tort cases, Illinois follows the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS and uses a most-significant-contacts approach similar to the one delineated in Section 145.  *Wreglesworth v. Artco, Inc.,* 738 N.E.2d 964, 969 (Ill. Ct. App. 2000).  "Illinois courts apply the local law of the place of the injury unless Illinois has a more significant relationship with the occurrence and with the parties." *Id.*; *see also Vickrey v. Caterpillar Tractor Co.*, 497 N.E.2d 814, 816 (Ill. Ct. App. 1986). "If Illinois has the more significant relationship with the occurrence and the parties, the law of Illinois should apply."  *Vickrey,* 497 N.E.2d at 816-17.  It is difficult to imagine how Illinois could possibly have a more significant relationship with the 2005 suicide bombing in Amman, Jordan, or with the proper parties to this dispute, none of whom are Illinois residents.

decedents, a breach of that duty, and an injury proximately caused by that breach. *Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1178 (Ill. 2000); *Lutz v. Goodlife Entm't, Inc.*, 567 N.E.2d 477, 479 (Ill. App. Ct. 1990).

Illinois law imposes no general duty to protect others from the criminal acts of third parties. *Hills*, 745 N.E.2d at 1178; *Sameer v. Butt*, 796 N.E.2d 1063, 1068 (Ill. App. Ct. 2003). Exceptions to this rule exist where the parties have a "special relationship" and the criminal act was "reasonably foreseeable." *Hills*, 745 N.E.2d at 1186-87; *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1153 (Ill. App. Ct. 1992). Illinois courts will not impose a duty, however, where it is unfair or unreasonable in light of the "magnitude of the burden" to guard against the criminal acts of third parties and where the negative "consequences of placing that burden upon the defendant" would outweigh the public interest in imposing the duty. *Rowe v. State Bank of Lombard*, 531 N.E.2d 1358, 1370 (Ill. 1988); *Sameer*, 796 N.E.2d at 1069.

First, Plaintiffs did not and cannot plead facts sufficient to demonstrate that anyone but the owners, operators, and managers of the Hotel—Amman Tourism—had any relationship with Plaintiffs or Plaintiffs' decedents, let alone a "special relationship." Secondly, even if Plaintiffs could establish a special relationship existed, Plaintiffs' generalized allegations regarding terrorist threats in the Middle East are not sufficient to establish that the suicide bombing of the Hotel was reasonably foreseeable and, therefore, that any of the named Defendants breached a duty. Finally, as a matter of public policy, the sad reality that suicide bombers attack innocent victims in public places cannot impose a duty on every landowner to ensure the safety of its guests against unpredictable acts of terrorism. Because a duty to protect against third-party attacks cannot arise from the mere awareness that brutal, calculating terrorists pose a vague,

unpredictable threat, Defendants respectfully request that this Court dismiss claims against all of the named defendants pursuant to Rule 12(b)(6).

### A. Defendants Had No Relationship With and No Duty to Plaintiffs or Plaintiffs' Decedents.

Because the Illinois Defendants had no relationship with Plaintiffs or Plaintiffs' decedents, special or otherwise, they owed no duty to protect them from the suicide attack. Generally, a landowner does not owe a duty to protect its lawful entrants from criminal attacks by third persons unless a "special relationship" exists between the parties. *Hills*, 745 N.E.2d at 1186-87; *Sameer*, 796 N.E.2d at 1069. Illinois law, however, "recognizes four special relationships which impose a legal duty to warn or protect a person from harm." *Lutz*, 567 N.E.2d at 479. For example, a special relationship between an innkeeper and her guests imposes a duty on a hotel owner to keep her guests safe. *Yamada v. Hilton Hotel Corp.*, 376 N.E.2d 227, 236 (Ill. App. Ct. 1977); *Mrzlak v. Ettinger*, 323 N.E.2d 796, 800 (Ill. App. Ct. 1975). Thus, if a hotel guest is assaulted by a third party, a court may hold the hotel owners and managers to a high degree of care. *Mrzlak*, 323 N.E.2d at 800; *Fortney v. Hotel Rancroft*, 125 N.E.2d 544, 548 (Ill. App. Ct. 1964); *but see McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1558 (7th Cir. 1987) (expressing doubt that innkeepers are held to a high standard of care under Illinois law). Additionally, a special relationship exists between a landowner and an invitee. *Sameer*, 796 N.E.2d at 1069; *Costa v. Gleason*, 628 N.E.2d 199, 200 (Ill. App. Ct. 1993). Unlike an innkeeper, a business owner has only a duty to exercise reasonable care to protect her invitees against the foreseeable criminal acts of third parties. *Costa*, 628 N.E.2d at 200; *Welsh v. White Castle Sys., Inc.*, 479 N.E.2d 944, 947 (Ill. App. Ct. 1985).

Plaintiffs cannot allege that the Illinois Defendants owed a duty to protect against third-party criminal acts because these Defendants have no relationship whatsoever, special or

otherwise, with Plaintiffs or Plaintiffs' decedents.  As is set forth in detail in Section II, *supra*, as well as in the attached affidavit of Mary Turilli, none of the Illinois Defendants owned, operated, or managed the Hotel.  Turilli Aff. Ex. D ¶¶ 2-7.  Although Plaintiffs might be able to plead the requisite "special relationship" with Hyatt EAME, who signed the Management Agreement, or with the Hotel's Jordanian owners, they cannot plead any such relationship with the Illinois Defendants.

Moreover, even the duty that Hyatt EAME or the Jordanian Hotel owners owe a guest would not extend to the Plaintiffs or Plaintiffs' decedents, because the bombing occurred in the public area of the Hotel.  The innkeeper-guest relationship imposes a duty to keep guests safe in their hotel rooms.  *See Yamada*, 376 N.E.2d at 236 (reversing judgment in favor of defendant hotel owner against plaintiffs who were injured or killed in their hotel room); *Fortney*, 125 N.E.2d at 548 (holding that a "guest, who is either asleep in his room or about to enter his room, should not be subjected to the risk of an assault by a stranger").   However, hotel owners, operators, and managers have no heightened duty to protect visitors from the criminal acts of third parties in public areas of the hotel.  *See Hill v. Charlie Club, Inc.*, 665 N.E.2d 321, 326 (Ill. App. Ct. 1996), *abrogated on other grounds by Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166 (Ill. 2000) (reversing judgment for plaintiff who was sexually assaulted in a hotel conference room).  According to the Amended Complaint, Plaintiffs and Plaintiffs' decedents were in the lobby of the Hotel when the suicide attack occurred.  Am. Compl. Ex. A ¶ 12 of Counts I-V.  Thus, even Hyatt EAME or the Jordanian Hotel owners did not have a heightened duty to protect Plaintiffs or Plaintiffs' decedents in a public lobby from the suicide bomber.

**B.    The November 9, 2005 Terrorist Attack on the Hotel Was Not a Reasonably Foreseeable Criminal Act.**

Even if Defendants had a "special relationship" with Plaintiffs or Plaintiffs' decedents—and they do not—the existence of a special relationship alone does not create a duty to protect against the criminal acts of third parties. *Hills*, 745 N.E.2d at 1187; *Lutz*, 567 N.E.2d at 479. Such a duty arises only where sufficient facts exist to put a defendant on notice that an intervening criminal act is *likely* to occur. *Hills*, 745 N.E.2d at 1187; 567 N.E.2d at 480. That is, the law only imposes a duty on a landowners to protect guests from "reasonably foreseeable criminal activity." *Popp*, 613 N.E.2d at 1153. The criminal activity must be "objectively reasonable to expect . . . not merely what might conceivably occur." *Charlie Club, Inc.*, 665 N.E.2d at 321 (quoting *Benner v. Bell*, 602 N.E.2d 896, 899 (Ill. 1992)). None of Defendants could have reasonably expected a terrorist to detonate a bomb in the lobby of the Hotel on November 9, 2005.

"General allegations of crime will not suffice to establish that future criminal attacks are foreseeable." *Popp*, 613 N.E.2d at 1153. In *Popp*, for example, plaintiff sought to enjoin defendants from operating their ATM machines "due to defendants' failure to provide even minimum reasonable personal security systems for the protection of its cardholders from third party criminal attacks." *Id.* at 1151. Plaintiff alleged that "1,500 to 5,000 criminal acts on ATM customers occur annually nationwide," but "made no allegations regarding specific locations or specific times at which future crimes may occur." *Id.* at 1153. The court dismissed her complaint, holding that plaintiff failed to sufficiently allege that "future attacks are foreseeable so as to give rise to a duty on the part of defendants to protect from such attacks." *Id.*

Furthermore, a criminal attack is not reasonably foreseeable unless circumstances have put defendants on notice of the probability of an attack. *Shortall v. Hawkeye's Bar and Grill*,

670 N.E.2d 768, 770 (Ill. App. Ct. 1996). A landowner is not an insurer of his guests' safety. *Sameer*, 796 N.E.2d at 1071. He has a duty to protect against only criminal conduct reasonably anticipated based on "the place or character of his business, or his past experience." *Id.* at 1071 (quoting RESTATEMENT (SECOND) OF TORTS § 344, cmt. f (1965)). Therefore, if "no special circumstances existed to charge [defendant] with knowledge of [an] unknown assailant's dangerous propensities, [his] duty of reasonable care cannot be extended to guard against a sudden criminal attack by a third person." *Lutz*, 567 N.E.2d at 481 (affirming summary judgment in favor of defendant nightclub owner where record did not "reflect that there was anything in the unknown assailant's actions to put a reasonably prudent person on notice that he was likely to attack anyone").

Plaintiffs' allegation that "a terrorist attack was reasonably foreseeable" based on "recent terrorist activity and anti-American sentiment in the region" is not sufficient to support the claim that the owners and managers of the Hotel owed a duty to protect Plaintiffs or Plaintiffs' decedents against third-party criminal acts. Am. Compl. Ex. A ¶ 11.e of Counts I-V. The knowledge that Plaintiffs allege is purely "generic in nature, based on nationwide statistics" regarding terrorist activities in Jordan and the Mideast over a number of years. *Popp*, 613 N.E.2d at 1154. Furthermore, Plaintiffs have not alleged any previous disruptions, acts of violence, or warnings of any sort at the Hotel that should have given the Hotel's owners, operators, and managers notice that such an assault was likely. Rather, Plaintiffs merely allege that the mastermind of the plot was an evil man who had been imprisoned in the 1990s and reference broad terrorist threats in the Middle East. Am. Compl. Ex. A ¶ 11.d-g of Counts I-V. These allegations hardly approach a sufficient pleading to establish that a suicide bombing in the Hotel's lobby was "objectively reasonable to expect" and are therefore insufficient to

demonstrate that the Hotel's owners, operators, and managers had a duty to protect against criminal attacks. *Charlie Club, Inc.*, 665 N.E.2d at 326.

      **C.     Fairness and Public Policy Concerns Weigh Against Burdening Hotel Owners and Operators with the Duty to Protect Against Unpredictable Terrorist Attacks.**

Finally, as a matter of public policy, the sad reality that suicide bombers carry out brutal attacks on innocent civilians in public places around the world cannot impose on every business owner and operator a duty to ensure the safety of their invitees against unpredictable acts of terrorism. "Although the basic test for determining the existence of a duty is foreseeability, [Illinois] courts have held that foreseeability alone does not establish the existence of a duty." *Lutz*, 567 N.E.2d at 480; *Sameer*, 796 N.E.2d at 1073. Courts must also consider "the likelihood of injury, the magnitude of the burden to the defendant of guarding against the injury and the consequences of placing the burden upon the defendant." *Rowe*, 531 N.E.2d at 1370. Thus, "[w]hether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *Bence v. Crawford Sav. & Loan Ass'n*, 400 N.E.2d 39, 42 (Ill. App. Ct. 1979) (affirming dismissal of plaintiff's complaint for wrongful death and negligence for injury's sustained by plaintiff's decedent during a bank robbery) (quoting *Goldberg v. Housing Auth. of City of Newark* 186 A.2d 291, 293 (N.J. 1962)).

It would not be "fair or reasonable to impose on a hotel the duty to conduct an investigation to discover every known offender who might enter the premises," or to uncover the identities of unknown suicide bombers who enter public areas within hotels. *Charlie Club, Inc.*, 665 N.E.2d at 326 (entering judgment on behalf of hotel owners and operators where third-party assailant was a known thief and sexual assailant who preyed on hotel guests). "The 'burdens and consequences' that would result from imposition of a duty under these circumstances would be

onerous." *Id.* To prevent suicide bombings, hotels and other businesses would be required to vigorously police all public areas of their premises at all times with bomb detection equipment and personnel armed and ready to shoot to kill. *See Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511, 516 (7th Cir. 2007) (affirming summary judgment in favor of defendant hotel because the third-party attack on the plaintiff "was as unexpected as [an] attack . . . by a rabid mongoose" and the "hotel could hardly be required to have security guards watching every inch of the lobby every second of the day and night"). Moreover, businesses "would be required to recognize and do something about any number of potential offenders, each of whom could have a different *modus operandi*." *Charlie Club, Inc.*, 665 N.E.2d at 326. Tragically, however, as the recurring worldwide headlines of the last decade continuously prove, no warning device or sensors can prevent lunatic suicide bombers who are determined to target innocent bystanders from committing unspeakable crimes. Terrorist attacks are virtually impossible to prevent. By imposing a duty on business owners to protect against them—especially since terrorists' methods are constantly evolving—this Court would create a virtually impossible burden to meet, an unfair and unjust result.

Because Plaintiffs have alleged no facts indicating Defendants had a duty to protect Plaintiffs or Plaintiffs' decedents from the November 9, 2005 suicide bombing, and because fairness and public policy concerns demand it, Defendants respectfully urge this Court to dismiss Amended Complaint in its entirety against them.

## CONCLUSION

Because Plaintiffs have no possibility of recovering against any of the Illinois Defendants, Defendants respectfully urge this Court to find that the Illinois Defendants have been fraudulently joined in an attempt to defeat this Court's diversity jurisdiction and to dismiss them as a result. Defendants further urge this Court to dismiss the Plaintiffs' claims against the

Defendants pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rule of Civil Procedure and based on *forum non conveniens*.  Finally, Defendants respectfully request that this Court deny Plaintiffs' motion to remand.

                                        Respectfully submitted,


                                    By:     /s/ Mark P. Miller              


H. Roderic Heard (1167170)
Mark P. Miller (6191128)
Lisa M. Fontoura (6273876)
WILDMAN, HARROLD,ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL 60606-1229
(312) 201-2000


Dated: January 14, 2008

## CERTIFICATE OF SERVICE

I, Mark P. Miller, an attorney, state that I have served a copy of the foregoing Memorandum of Law In Support of Defendants' Consolidated Motion to Dismiss Plaintiffs' Amended Complaint and In Opposition to Plaintiffs' Motion to Remand to all counsel of record via electronic case filing system (CM/ECF) as indicated below, from 225 West Wacker Drive, Chicago, Illinois, 60606, on this 14th day of January 2008:

      Thomas A. Demetrio – tad@corboydemetrio.com

      William T. Gibbs – wtg@corboydemetrio.com

                            /s/ Mark P. Miller _____