IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, Deceased, SOOHA AKKAD, individually; SUSAN GITELSON, Special Administrator of the Estate of RIMA AKKAD MONLA, deceased; and MICHAEL BUTLER,<br><br>    Plaintiffs,<br><br>  v.<br><br>H GROUP HOLDING, INC., a corporation; GLOBAL HYATT CORPORATION, a corporation; HYATT INTERNATIONAL CORPORATION, a corporation; HYATT CORPORATION, a corporation; HYATT HOTELS CORPORATION, a corporation; HYATT INTERNATIONAL (EUROPE AFRICA MIDDLE EAST) LLC; AIC HOLDING CO., a corporation; HYATT INTERNATIONAL HOLDINGS, CO., a corporation; HI HOLDINGS LUXEMBURG S.a.r.l.; ZARA INVESTMENT HOLDING CO.; and AMMAN TOURISM INVESTMENT CO., LTD.,<br><br>    Defendants. | No. 07 C 6830<br>Judge John W. Darrah |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

   Defendants Zara Investment (Holding) Co. and Amman Tourism Investment Co., Ltd., by their undersigned counsel, present this Memorandum of Law in support of their Motion to Dismiss.

## FACTUAL BACKGROUND

The present action arises from a suicide bombing in Amman, Jordan on November 9, 2005. The plaintiffs filed this action against several defendants, including Zara Investment (Holding) Co. and Amman Tourism Investment Co. Ltd. (sometimes referred to as "the Jordanian defendants"). Plaintiffs allege that the Jordanian defendants had a duty to protect them, and those on whose behalf they bring this action, from the suicide bomber, and failed to do so.

Plaintiffs filed their action in Illinois seeking to recover for wrongful death and personal injuries arising from a terrorist act half a globe away. The Jordanian defendants are incorporated in Jordan, and have their principal places of business in Amman, Jordan. (Aff. of Yassin K. Talhouni, par. 3; Aff. of Khaled S. Masri, par. 3.) The Jordanian defendants are not registered to do business in Illinois, nor have they designated agents for service of process in Illinois. (Aff. of Yassin K. Talhouni, par. 4; Aff. of Khaled S. Masri, par. 4.) The Jordanian defendants have no offices, employees, bank accounts, or other assets in Illinois, and do not transact business in Illinois. (Aff. of Yassin K. Talhouni, pars. 5, 6; Aff. of Khaled S. Masri, pars. 5, 6.) The Jordanian defendants do not advertise or solicit business in Illinois. (Aff. of Yassin K. Talhouni, par. 7; Aff. of Khaled S. Masri, par. 7.) Further, the Jordanian defendants do not maintain a telephone, telex or telefax number in Illinois. (Aff. of Yassin K. Talhouni, par. 8; Aff. of Khaled S. Masri, par. 8.) And the occurrence at issue – the suicide bombing of a Jordanian hotel, a criminal and hideous act to be sure – has no connection to Illinois.

Defendant Amman Tourism Investment Co. is simply and unfortunately the owner of a hotel in Amman, Jordan in whose lobby a suicide bomber chose to explode himself. (Aff. of Yassin K. Talhouni, par. 10.) Zara Investment (Holding) Co. owns the shares of stock in Amman Tourism. (Aff. of Khaled S. Masri, par. 10.)

This is a clear case where the Court lacks personal jurisdiction. Equally clear is that for the Jordanian defendants, Illinois is a vexatious and oppressive forum in which to be haled into court and forced to defend themselves for the havoc wreaked by a suicidal terrorist in Jordan. For these reasons, as more fully developed below, Counts VI, VII, VIII, IX, and X of plaintiffs' Amended Complaint at Law directed against the Jordanian defendants should be dismissed with prejudice.

# I

## Plaintiffs' Action Should Be Dismissed for Lack of Personal Jurisdiction over Defendants.

Plaintiffs' action against the Jordanian defendants should be dismissed for lack of personal jurisdiction. The Jordanian defendants have no contacts within Illinois that would subject them to the Court's jurisdiction. Accordingly, plaintiffs' claims against them should be dismissed with prejudice.

### A.    Procedural and Due Process Jurisdictional Considerations

The plaintiff carries the burden of establishing that the district court has personal

jurisdiction over the defendants.[1] *Purdue Research Foundation* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *RAR, Inc.*, v. *Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). A federal district court sitting in a diversity action may exercise jurisdiction over a defendant only if the state in which the district court sits would have jurisdiction over the defendant. *RAR, Inc.*, 107 F.3d at 1275-76. Three sources define the extent of the state's personal jurisdiction: (1) the state's statutes; (2) the state's constitution and (3) the federal constitution. *Id.* at 1276.

In Illinois, state courts are authorized by statute to exercise personal jurisdiction to the fullest extent allowed by the due process guarantees of the state and federal constitutions. 735 ILCS 5/2-209(c); *RAR, Inc.*, 107 F.3d at 1276. Moreover, while the theoretical possibility exists that the Illinois State Constitution provides for a standard of due process different than that of the United States Constitution, no Illinois court has ever articulated any concrete difference between the two standards. *Hyatt International Corp.* v. *Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002); *RAR, Inc.*, 107 F.3d at 1276. In all practicality, the sole area of inquiry is the extent to which the United State Constitution will allow the exercise of personal jurisdiction over a defendant. *Hyatt International Corp.*, 302 F.3d at 715-16; *RAR, Inc.*, 107 F.3d at 1277.

---

[1] The nature of the plaintiff's burden depends on whether the court holds an evidentiary hearing. *Purdue Research Foundation* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where an evidentiary hearing is held, the plaintiff must establish jurisdiction by a preponderance of the evidence; where such a hearing is not held and the court rules solely on the parties' written submissions, the plaintiff must only make out a *prima facie* case of personal jurisdiction. *Id.*

Under the United States Constitution, a state may exercise personal jurisdiction over a defendant where the defendant has "certain minium contacts with the state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945)(quoting *Milliken* v. *Meyer,* 311 U.S. 457, 463 (1940)). Fortuitous contacts are insufficient; rather for a court to invoke personal jurisdiction over a defendant, it must find that the defendant "purposefully established minimum contacts within the forum State." *Hyatt International Corp.*, 302 F.3d at 716 (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 476 (1985)). It is necessary that the defendant intentionally "availed itself of the privilege of conducting business" in the forum state and that the defendant "should reasonably anticipate being haled into court" there. *Hyatt International Corp.*, 302 F.3d at 716 (quoting *Burger King Corp.* 471 U.S. at 475).

    **B.**    **Specific versus General Jurisdiction**

In turn, the minimum contacts standard depends on whether the basis for personal jurisdiction is "specific" or "general." *RAR, Inc.*, 107 F.3d at 1277. Specific jurisdiction applies to those cases where the action is related to or arises from the defendant's contacts with the forum. *Id.* General jurisdiction, on the other hand, applies to those cases where the defendant has "continuous and systematic general business contacts" with the forum. *Id.*

To establish specific jurisdiction, the plaintiff must demonstrate that the cause of action relates to the defendant's contacts, that it "purposefully established minimum

contacts within the forum state," and that under traditional notions the exercise of personal jurisdiction would be fair and reasonable. *Id.*

Establishing general jurisdiction means meeting a significantly more stringent standard. *Purdue Research Foundation*, 338 F.3d at 787. To establish general jurisdiction, the plaintiff must establish that the defendant maintains "continuous and systematic business contacts" with the forum. *Id.* An inquiry into general jurisdiction is not dependent on the subject matter of the litigation. *Id.* Rather, the question is whether the defendant's contacts with the forum are so extensive that the defendant is considered to be constructively present in the state so that it would be "fundamentally fair to require it to answer in [the forum state] *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id.* (emphasis in original).

Although the court rejected the plaintiff's jurisdictional argument in *Bresciani* v. *The Leela Mumbai-A-Kempinksi Hotel*, 311 F.Supp.2d 440 (S.D.N.Y. 2004), a case more strongly suggestive of personal jurisdiction than the present one, the decision evinces just how stringent the standard for general jurisdiction is. There the court found jurisdiction to be lacking over a foreign hotel, notwithstanding the hotel's ties to the State of New York. The defendant, the Leela Mumbai – A Kempinksi Hotel had been sued for injuries suffered at the hotel, located in Mumbai, India. *Id.* at 441. The defendant was incorporated under the laws of India and had its registered office in Mumbai. *Id.* The defendant had no offices in New York, nor any employees in New York. *Id.* It was not licensed to do business in New York and had no registered agent for service of process in New York. *Id.* It had no

telephone, telex or telefax number in New York. *Id.* And the defendant did not own any real or personal property in New York and did not pay taxes to New York. *Id.*

So far *Bresciani* is on all fours with the present case. In *Bresciani*, however, the defendant had entered into a contract with Hotel Representative, Inc. (HRI), the owner and sole shareholder of Leading Hotels of the World, Ltd. (Leading Hotels), which was also a party to the contract (though neither was a party to the suit). Both HRI and Leading Hotels maintained their principal places of business in New York City. *Id.* at 442-43. Pursuant to the contract, HRI and Leading Hotels solicited business, distributed brochures and promotional materials, and received and processed reservations, akin to travel agents. *Id.*

In *Bresciani*, the plaintiff who suffered injuries at the defendant's hotel in India was at least a New York resident. No argument was made that the district court had specific jurisdiction; rather, relying on the activities of HRI and Leading Hotels, both New York residents, the plaintiff argued that the district court had general jurisdiction over the defendant hotel. *Id.* The court noted that while granting an agent present in the state the authority to confirm reservations is sufficient to establish jurisdiction, the mere solicitation of business from prospective customers in New York is not sufficient to establish jurisdiction. *Id.* at 444-45.

In the present case, the Jordanian defendants have no contract with an agent present in Illinois (with or without authority to confirm reservations). Rather, the Jordanian defendants have entered into a management contract with a Swiss corporation, Hyatt International Europe Africa Middle East LLC., and did not travel to Illinois to negotiate or

7

sign such contract. (Aff. of Yassin K. Talhouni, par. 9; Aff. of Khaled S. Masri, par. 9.) Accordingly, the present facts create an even stronger argument in favor of a finding of lack of personal jurisdiction than in *Bresciani*.

The present defendants don't just lack sufficient contacts with the State of Illinois to satisfy either specific or general jurisdiction, they lack *any* contacts. The Jordanian defendants have not purposefully availed themselves of the privileges of conducting activities in Illinois, have conducted no activities in Illinois and could not have reasonably anticipated being haled into court to defend any type of claim in Illinois, including the present tort action arising from a suicide bombing in Amman. If exercising jurisdiction over a defendant would violate traditional notions of fair play and reasonableness in any case, this is the case.

Based on the foregoing, this Court lacks jurisdiction over the Jordanian defendants and Counts VI, VII, VIII, IX, and X of plaintiffs' Amended Complaint should be dismissed with prejudice.

II

**Plaintiff's Action Should Be
Dismissed Under the Doctrine
of *Forum Non Conveniens*.**

Regardless of the determination of the issue of personal jurisdiction, a second basis exists warranting the dismissal of plaintiffs' claims: *forum non conveniens.*

**A.    General Considerations**

The common law doctrine of *forum non conveniens* allows a court to dismiss a case

"when an alternative forum has jurisdiction to hear [the case] . . . and trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem International Co., Ltd.,* v. *Malaysia International Shipping Corp.*, 127 S.Ct. 1184, 1190 (2007)(quoting *American Dredging Co.* v. *Miller*, 50 U.S. 443, 447-48). The doctrine of *forum non conveniens*, largely supplanted by statute in cases involving a choice of forum within the United States, has continued application where the alternative forum is found in a foreign country. *Sinochem International Co., Ltd.,* 127 S.Ct. at 1190.

In fact where a "foreign tribunal is plainly the more suitable arbiter of the merits of the case," a district court may dismiss an action without ever addressing the threshold questions of subject and personal jurisdiction. *Sinochem International Co., Ltd.,* 127 S.Ct. at 1188. Taking up a *forum non conveniens* challenge in the first instance protects a defendant from the effort and expense imposed by a jurisdictional battle, which in many cases requires commencement of discovery. *See id*. at 1189-90, 1194. The Jordanian defendants seek dismissal on the basis of *forum non conveniens*, and if the Court is inclined to allow discovery on the issue of personal jurisdiction, defendants request that the Court make its determination on the defense of *forum non conveniens* in the first instance.

The first step in a *forum non conveniens* analysis is to determine whether an adequate alternative forum is available. *Hyatt International Corp.* v. *Coco*, 302 F.3d 707, 718 (7th Cir. 2002). If such a forum is available, the court will consider private and public factors

9

related to the proper location for the action. *Id.* In the present case, an adequate alternative forum exists – Jordan – and the private and public factors weigh in favor of litigating the present action in Jordan. In fact, allowing this action to proceed in the present forum would be patently oppressive and vexatious out of all proportion to plaintiffs' convenience. *See Sinochem International Co., Ltd.,* 127 S.Ct. at 1190.

**B.     Jordan Is an Available and Adequate Forum**

Jordan is both an available and adequate forum in which plaintiffs may bring their action. An available alternative forum is one where all parties are amenable to process. *Kamel v. Hill Rom Company, Inc.,* 108 F.3d 799, 803 (7th Cir. 1997). An adequate alternative forum is one where the litigants are not deprived of all remedies or treated unfairly. *Kamel,* 108 F.3d at 803. Jordan is an available forum as the owners and managers of the hotel are amenable to the jurisdiction of Jordanian courts. *See* Aff. of Ibrahim, par. 5, attached as Exhibit D to Memorandum of Law in Support of Defendants' Consolidated Motion to Dismiss Plaintiffs' Amended Complaint and Opposition to Plaintiffs' Motion to Remand, Document #28. Jordan is also an adequate forum as its legal system allows plaintiffs, like those in the present case, to obtain redress for their damages arising from personal injuries. *Id.* Significantly, other victims of the very same suicide bombing have filed suit against the Jordanian defendants in Jordan, and those actions are ongoing. *Id.* at par. 6

It should be noted that Jordan maintains a three-tiered judiciary, with a trial court, an intermediate level appellate court and a court of last resort. Litigants have an automatic right to appeal a judgment entered by the trial court. *Id.* at par. 4.

## C. The Public and Private Factors Weigh in Favor of Dismissal

Turning to the public and private factors involved in a *forum non conveniens* analysis, it is evident that plaintiffs' action should be dismissed in favor of Jordan, the more convenient forum. Preliminarily, it should be noted while a plaintiff's choice of forum is ordinarily entitled to deference, where a plaintiff brings suit outside of his home forum, his choice is entitled to less deference. *Kamel,* 108 F.3d at 803. Here, none of the plaintiffs reside in Illinois, and their inexplicable decision to file their action in Illinois receives considerably less deference.

The private interests at issue readily demonstrate how Illinois is a terribly inconvenient forum. The relevant private factors are: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) the possibility of viewing the premises, if necessary, and (5) all other practical problems involved in making the trial of the case, easy efficient and economical. *Kamel,* 108 F.3d at 803. Each of these factors militates against the present forum.

First, the physical evidence and witnesses are located in Jordan. The site of the bombing, the investigation, the hotel premises and records, the medical treatment and records, the public authorities, the other hotel facilities bombed at the same time, the evidence associated with the third-party perpetrators, the occurrence witnesses, and the records of other, relevant violent history, if any, are all located in Jordan.

Second, obtaining the testimony of unwilling witnesses in Jordan for use in the

present forum would be extremely difficult. Jordan is neither a signatory to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters nor any other international convention pertaining to judicial assistance. http://travel.state.gov/law/info/judicial/judicial_675.html (visited March 19, 2008). While Jordanian law does allow voluntary depositions of willing witnesses, stenographer services are not available for transcribing the deposition testimony of a willing witness. *Id.* The parties must instead seek to obtain the services of a U.S. consular officer to facilitate a deposition, which includes the payment of fees for the administration of oaths, importing a stenographer and hiring an interpreter. *Id.*

Testimony of an unwilling witnesses in Jordan may be compelled by way of a letter rogatory. *Id.* To compel the deponent in a letter rogatory, a party must make application with a court of law. *Id.* Letters rogatory, along with a Diplomatic Note, must be translated into Arabic, and initially transmitted through the Jordanian Ministry of Foreign Affairs. *Id.* The letters must be authorized by the forum from which they issue, and authenticated by the U.S. Embassy in Jordan. *Id.* The letters are eventually presented to a Jordanian judge for approval. *Id.* The United States Department of State does not recommend use of letters rogatory since service may take more than a year to accomplish and local Jordanian authorities may be unfamiliar with the process and reluctant to approve a request. *Id.*

Third, the costs of compelling the attendance of willing witnesses will be exorbitant as this will most likely require travel and lodging of witnesses from Jordan in Chicago, in addition to translation services. Fourth, a trial in the present forum would preclude the

possibility of viewing the premises, a hotel in Amman, Jordan. And finally, there would be several daunting, practical problems involved in seeking to try the present case in Illinois, including translating extensive documentary evidence from Arabic to English.

Likewise each of the public factors involved in a *forum non conveniens* analysis weighs against the present forum. The relevant public factors include: (1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Kamel*, 108 F.3d at 803.

With regard to the first public interest factor, the difficulties, delays and expense in connection with travel, lodging and translating the testimony of Jordanian witnesses would cause the trial of this matter to run much longer than a typical wrongful death and personal injury case, would increase the cost to the parties to put on a fair trial and would unduly increase the congestion on this Court's trial docket. These difficulties, delays and expense could be ameliorated were the matter tried in a Jordanian court. As to the second factor, the Jordanian legal system has a far greater interest in deciding a case arising from a suicide bombing in a Jordanian hotel. The third and fourth factors involve choice of law, and these factors weigh heavily against the present forum. It would appear that Jordanian law would apply to the present case. Illinois courts apply the law of the situs of the injury,

unless Illinois has a more significant relationship to the occurrence or the parties. *Wreglesworth* v. *Artco, Inc.*, 738 N.E.2d 964, 969 (Ill. Ct. App. 2000). In the present case, Illinois has no significant relationship to the occurrence, to the plaintiffs or to the Jordanian defendants.

Finally, it would be tremendously unfair to burden Illinois jurors with lengthy jury duty, necessarily involving translated testimony and documents, for a terrorist act two continents and an ocean away, where even the plaintiffs are not from Illinois.

## CONCLUSION

Based on the foregoing, and pursuant to the Due Process Clause and the doctrine of *forum non conveniens*, Counts VI, VII, VIII, IX, and X of plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted,

/s/ Adam J. Glazer
One of Defendants' Attorneys

Adam J. Glazer
Richard M. Goldwasser
Schoenberg Finkel Newman & Rosenberg, LLC
222 South Riverside Plaza
Suite 2100
Chicago, Illinois 60606
(312) 648-2300

## PROOF OF SERVICE

Adam J. Glazer, an attorney, hereby certifies that he caused a copy of the attached **Defendants' Memorandum of Law in Support of Motion to Dismiss** to be served on all counsel via electronic case filing system (CM/ECF) as indicated below, from 222 South Riverside Plaza at 222 S. Riverside Plaza, Chicago, Illinois before 5:00 p.m. on March 25, 2008.

      Thomas A. Demetrio - tad@corboydemetrio.com

      William T. Gibbs - wtg@corboydemetrio.com

      Mark P. Miller - millerm@wildman.com

                                                        /s/ Adam J. Glazer