UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY SIEGEL, Administrator of the Estate of MOUSTAPHA AKKAD, deceased; SOOHA AKKAD; SUSAN GITELSON, Special Administrator of the Estate of RIMA AKKAD MONLA, deceased; and MICHAEL BUTLER,<br><br>Plaintiffs,<br><br>v.<br><br>H GROUP HOLDING, INC.; GLOBAL HYATT CORPORATION; HYATT INTERNATIONAL CORPORATION; HYATT CORPORATION; HYATT HOTELS CORPORATION; HYATT INTERNATIONAL (EUROPE AFRICA MIDDLE EAST) LLC; AIC HOLDING CO.; HYATT INTERNATIONAL HOLDINGS CO.; HI HOLDINGS LUXEMBURG S.a.r.l.; ZARA INVESTMENT HOLDING CO.; and AMMAN TOURISM INVESTMENT COMPANY, LTD.,<br><br>Defendants. | No. 07 C 6830<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, victims and administrators of the estates of victims of a suicide bombing in the Grand Hyatt Amman Hotel ("the Hotel") in Amman, Jordan, brought suit in the Circuit Court of Cook County, Illinois, against Defendants, eleven American and foreign entities with alleged ties

to the Hotel. Defendants removed the case to this Court. Currently before the Court is Plaintiffs' motion to remand this action to state court.

## BACKGROUND

This case stems from the November 9, 2005 suicide bombing of the Hotel. Plaintiffs' decedents, Moustapha Akkad and Rima Akkad Monla, were among those killed in the attack. Plaintiffs Sooha Akkad and Michael Butler were injured in the attack. All four were registered guests at the Hotel at the time of the attack.

On September 10, 2007, Plaintiff Jeffrey Siegel, Administrator of the Estate of Moustapha Akkad, and Plaintiff Sooha Akkad filed suit in the Circuit Court of Cook County, Illinois, against Global Hyatt Corporation ("Global Hyatt") and Hyatt International Corporation ("Hyatt International"). Defendants moved to dismiss the complaint on the grounds that neither Global Hyatt nor Hyatt International owned, operated, or managed the Hotel. On November 7, 2007, Plaintiffs filed an amended complaint, adding two additional plaintiffs and nine additional defendants. The additional Plaintiffs are Michael Butler and Susan Gitelson, as Special Administrator of the Estate of Rima Akkad Monla. The nine additional Defendants are H Group Holding, Inc. ("H Group"); Hyatt Corporation ("Hyatt Corp."); Hyatt Hotels Corporation ("Hyatt Hotels"); Hyatt International (Europe Africa Middle East) LLC ("Hyatt EAME"); AIC Holding Co. ("AIC"); Hyatt International Holdings Co. ("HIH"); HI Holdings Luxemburg S.a.r.l. ("HI Lux"); Zara Investment Holding Co. ("Zara"); and Amman Tourism Investment Company, Ltd. ("ATIC").

In their amended complaint, Plaintiffs make the following allegations regarding the Defendants' involvement with the Hotel on and before November 9, 2005. Zara and ATIC, individually and by and through their agents and employees, owned, operated and managed the Hotel and provided security for the Hotel. Hyatt EAME, pursuant to the terms of a management agreement ("the Agreement"), by and through its agents and employees, operated and managed the Hotel. Hyatt EAME was an affiliate of H Group, Global Hyatt, Hyatt Corp., Hyatt Hotels, AIC, HIH, and HI Lux (collectively "the Affiliate Defendants") and was required by the Agreement to manage the Hotel in conformity with the standards of each of the Affiliate Defendants. The Affiliate Defendants, individually and by and through their affiliate Hyatt EAME, directly participated in the supervision, direction, operation and management of the Hotel and provided security for the Hotel.

Plaintiffs allege that the November 5, 2007 bombing was foreseeable to Defendants. Plaintiffs allege that Defendants were negligent in not providing adequate security to its guests, specifically that Defendants removed metal detectors from the hotel entrance prior to the day of the bombing, and that Plaintiffs were harmed as a result. Plaintiffs Siegel and Gitelson have brought suit for negligence under the Wrongful Death Act, 740 ILCS 180/1 *et seq.*, and the Survival Act, 755 ILCS 5/27-6. Plaintiffs Akkad and Butler have brought suit for negligence.

On December 4, 2007, Defendant Hyatt EAME removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Hyatt EAME maintained that removal was proper even though five of the Defendants – H Group, Global Hyatt, Hyatt International, Hyatt Corp. and Hyatt Hotels ("the Illinois Defendants") – are corporations with their principal places of business

in Illinois. Defendants argue that the Illinois Defendants have been fraudulently joined and, thus, are not properly joined parties under 28 U.S.C. § 1441(b).

Plaintiffs have moved to remand, arguing that the Illinois Defendants are properly joined; and, therefore, removal was improper.

## LEGAL STANDARD

Because five of the Defendants in this case have Illinois citizenship, removal is only proper if those Defendants have been fraudulently joined. *See* 28 U.S.C. § 1441(b); *Bodine's, Inc. v. Federal Insurance Co.*, 601 F.Supp. 47 (N.D.Ill. 1984) (*Bodine's*) ("It is axiomatic that the right to remove a diversity action 'cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'") (citing *Chesapeake & Ohio Ry. v. Cockrell*, 232 U.S. 146 (1914)). A defendant is fraudulently joined when "there is no possibility" that the plaintiff can state a cause of action against that defendant in state court. *Gottlieb v. Westin Hotel Company*, 990 F.3d 323, 327 (7th Cir. 1993) (*Gottlieb*); *Faucett v. Ingersoll-Rand Mining and Machinery Co.*, 960 F.2d 653, 654-55 (7th Cir. 1992) (*Faucett*).

The "heavy burden" of establishing that a party has been fraudulently joined rests with the removing party. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (*Poulos*); *Ontiveros v. Anderson*, 635 F.Supp. 216, 218 (N.D. Ill. 1986) (*Ontiveros*); *See also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (the burden of establishing jurisdiction rests upon the party asserting it). In conducting this inquiry, all issues of fact and law are resolved in favor of the plaintiff. *Poulos*, 959 F.2d at 73. When there is "even a possibility that a state court would find that the complaint states a cause of action against the resident defendant," fraudulent joinder is not established. *Ontiveros*, 635 F.Supp. at 218-19.

## ANALYSIS

Plaintiffs have alleged that, as guests of a hotel, they were owed a duty of protection from the owners and managers of the hotel. *See, e.g., Yamada v. Hilton Hotel Corp.*, 60 Ill. App.3d 101 (1st Dist. 1977). Defendants do not dispute this point. However, Defendants do dispute Plaintiffs' allegations that the Illinois Defendants directly participated in the supervision, direction, operation and management of the Hotel. Defendants offer the affidavit of Mary Turilli, Vice President of Defendant Hyatt Hotels, which states that the Illinois Defendants neither owned, operated, nor managed the Hotel. Defendants argue that, as a result, there is no possibility that Plaintiffs could prevail against the Illinois Defendants in state court.

The parties dispute the extent to which the Court may look beyond the pleadings in determining whether the Illinois Defendants have been fraudulently joined. Plaintiffs argue that the question before the Court is whether their allegations could possibly state a cause of action in state court. They argue that their allegations, alone, are sufficient to defeat Defendants' claim of fraudulent joinder. Defendants argue that piercing the pleadings is entirely appropriate and that the Court should consider both the Turilli affidavit and the Agreement, which Plaintiffs rely on to link the Illinois Defendants with the management of the Hotel.

"[T]here is substantial authority permitting a court to pierce the pleadings and consider summary-judgment-type evidence such as affidavits and deposition testimony." *Peters v. AMR Corporation*, 1995 WL 358843 at *3 (N.D.Ill. 1995) (*Peters*) (citing *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990) and *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 n. 9 (5th Cir. 1981)). "[A] limited use of affidavits and other evidence is permissible so long as the evidence is not used to 'pre-try' the case." *Peters*, 1995 WL 358843 at *3. *See also Faucett*, 960 F.2d at 654-55 (a defendant's uncontested affidavit stating that he had absolutely nothing to do with the events at issue in the case was sufficient to establish fraudulent joinder).

This case is analogous to *Bodine's, Inc. v. Federal Insurance Co.*, 601 F.Supp. 47 (N.D.Ill. 1984). In *Bodine's*, the court, in ruling on the issue of fraudulent joinder, examined the contract upon which the plaintiff based the suit, as well as affidavits supplied by the defendant. *Bodine's*, 601 F.Supp. at 49. The court, in evaluating all contested factual issues in the light most favorable to plaintiff, relied on the contract and the affidavits to find that the defendants in question were not parties to the contract and, therefore, held that they were fraudulently joined. *Bodine's*, 601 F.Supp. at 50. Therefore, the Agreement and the affidavits offered here by the Defendants are properly considered.

The Turilli affidavit provides the following information regarding the relations between the Illinois Defendants, Hyatt EAME, various other Defendants and the Hotel as of the date of the bombing. Hyatt EAME had signed the Agreement with the owner of the Hotel, ATIC, in 1994. Hyatt EAME was a wholly owned subsidiary of III Lux, which was, in turn, a subsidiary of HIH. HIH was a subsidiary of Hyatt International, one of the Illinois Defendants in this case. Hyatt International was a subsidiary of AIC, which was, in turn, a subsidiary of Global Hyatt,

also an Illinois Defendant. Global Hyatt was the parent company of Hyatt Corp., which was the parent company of Hyatt Hotels, both Illinois Defendants. The final Illinois Defendant, H Group, had no corporate relationship to any of the above companies.

The question before the Court is whether any of the Illinois Defendants directly participated in the supervision, direction, operation and management of the Hotel. Plaintiffs rely primarily on the Agreement in support of their contention that they did. Plaintiffs argue that the Agreement indicates several ways in which various affiliates of Hyatt EAME could have been involved with the operation of the Hotel. First, several provisions provide for the Hotel to be run in accordance with Hyatt standards and procedures. Under the Agreement, the Hotel's general manager must be equipped with Hyatt International's policies and systems and procedures manual. The Agreement provides that the Hotel is to be "operated under standards comparable to those pertaining in [Hyatt International's] hotels throughout the world." The owner was to build, equip, furnish and decorate [the Hotel] in conformity with Hyatt International's design standards and criteria.

The Agreement also contains other requirements apparently meant to integrate the Hotel into the network of other hotels presented as Hyatt hotels. The Agreement provides that the Hotel would be marketed and advertised in Hyatt International hotels and sales offices. The Hotel was to have a credit card system "in conformity with Hyatt International's policy," and Hyatt EAME was required to pay for its share of maintenance and staffing at Hyatt International's home office and regional sales offices. The Hotel's accounting books and

records were to be open to "internal auditors of Hyatt International or its affiliates." The Agreement also provides that Hyatt International and Hyatt Corp. were to be named as insureds on the Hotel's policy.

Finally, the Agreement provides for certain instances in which Hyatt EAME's affiliates might work in or provide services to the Hotel. Hyatt EAME and its affiliates were to be reimbursed regarding their involvement in opening the Hotel. Hyatt EAME, in its management of the Hotel, could purchase goods, supplies, insurance and services from or "through [Hyatt International] or any of its affiliates." Hyatt EAME could also "elect to assign employees of [Hyatt EAME] of [Hyatt International] or any of its affiliates or of any other hotels of [Hyatt International] temporarily or permanently as full-time members of the executive staff of the hotel."

In addition to the Agreement, Plaintiffs point to a statement released by the Global Hyatt VP of Corporate Communication and the Director of Corporate PR of Hyatt Hotels immediately following the bombing. The release states that "Global Hyatt Corporation" expresses its deepest sympathies to the victims. It goes on to state "it is Hyatt's intention to re-open the hotel" and "Hyatt maintains a carefully prepared security plan for each of its hotels."

Defendants counter that Plaintiffs are misconstruing the Agreement. First, Defendants argue, the Agreement is between ATIC and Hyatt EAME. None of the other Hyatt entities are parties to the Agreement. Furthermore, Defendants argue, the Agreement does not contemplate any direct participation in the operation or management of the Hotel by any Hyatt entity other

than Hyatt EAME. The only Illinois Defendant actually mentioned in the Agreement is Hyatt International; and, there, the Agreement does nothing more than "allude to aspirational 'standards comparable to those prevailing in [Hyatt International] hotels throughout the world.'"

Defendants point out that the Agreement provides that only Hyatt EAME was to provide and arrange for management services, operate the Hotel's bank accounts, consult with the ATIC and make operating recommendations, contact third parties on ATIC's behalf or "participate in any other operational or managerial decisions cited in Plaintiffs' Reply." Specifically, Defendants point to provisions in the Agreement that provide that Hyatt EAME "shall have complete control and discretion in the operation of the Hotel" and that Hyatt EAME shall "arrange for the purchase . . . of security protection." Defendants argue that the Agreement, as thus construed, provides no evidence that any of the Illinois Defendants directly or indirectly participated in making security arrangements at the Hotel. Finally, Defendants dismiss Plaintiffs' reliance on the statement released following the bombing as merely an expression of sympathy, which Defendants argue, "cannot serve as proof of how the Hotel was managed prior to November 11, 2005."

Evaluating all evidence in a light most favorable to the Plaintiffs, Defendants have not met their "heavy burden" of showing that the Illinois Defendants have been fraudulently joined. In determining whether a defendant is fraudulently joined, a court may consider summary-judgment-type evidence, such as the Turilli affidavit. *See Peters*, 1995 WL 358843 at *4. However, the Court must not make credibility determinations or make findings on the ultimate issues of fact. *See Momans v. St. John's Northwestern Military Academy, Inc.*, 2000 WL 33976543 (N.D. Ill. 2000).

9

Here, Defendants have offered an affidavit, stating that the Illinois Defendants did not own, operate, nor manage the Hotel. However, the Agreement, viewed in the light most favorable to the Plaintiffs, plausibly supports a contrary inference: that Hyatt International had a role in the operation and management of the Hotel at the time of the injury. Furthermore, Global Hyatt's statement following the bombing that "Hyatt maintains a carefully prepared security plan for each of its hotels" raises a factual issue of whether Global Hyatt and/or Hyatt International participate directly in providing security for its hotels. This is not a situation, such as in *Faucett*, where the defendant has offered an uncontested affidavit stating that he had nothing to do with the subject matter of the case. *See Faucett*, 960 F.2d at 654-55. Rather, the Agreement itself and Defendants' public statements suggest at least the possibility of their direct participation in providing security for the Hotel.

## CONCLUSION

For the reasons stated above, at least two of the Illinois Defendants, Global Hyatt and Hyatt International, are not fraudulently joined; and removal was improper under § 1441(b). Therefore, Plaintiffs' motion to remand is granted.

Dated: April 9, 2008

JOHN W. DARRAH
United States District Court Judge